508 P.2d 1276

**SEVEN RIVERS FARM, INC., et al.,**
Petitioners-Appellants,

v.

**S. E. REYNOLDS, State Engineer,**
Respondent-Appellee.

**SEVEN RIVERS FARM, INC.,**
Petitioner-Appellant,

v.

**S. E. REYNOLDS, State Engineer,**
Respondent-Appellee.

No. 9439.

Supreme Court of New Mexico.

April 6, 1973.

McAtee, Marchiondo & Berry, John C. Maine, Jr., Albuquerque, for petitioners-appellants.

David L. Norvell, Atty. Gen., Paul Bloom, Peter Thomas White, Sp. Asst. Attys. Gen., Santa Fe, for respondent-appellee.

## OPINION

STEPHENSON, Justice.

In a water adjudication suit relating to the Roswell Underground Water Basin in Chaves and Eddy Counties, a partial final judgment and decree was entered on January 10, 1966 which was confirmed and supplemented in certain respects by an order of May 18, 1970. Matters relative to those adjudications ("the decrees") are pending before us on appeal. State ex rel. Reynolds, State Engineer, et al. v. Lewis et al., 84 N.M. 768, 508 P.2d 577. No claim is made in this case that the pendency of that appeal is material here.

The decrees adjudicated the amount of the shallow water rights with which we are here concerned and further, so far as is now material:

A. Required the owners of the rights to install suitable measuring devices, of a kind approved by the state engineer, to measure accurately the amount of water diverted from the wells.

B. Provided for the appointment of a watermaster and prescribed his duties.

C. Permitted a diversion in excess of the adjudicated right to offset carriage losses for 1967 and later years.

D. Permitted the total annual duty of water to be exceeded in any one year, with a proviso that the total amount diverted during any period of five consecutive years must not exceed five times the annual duty of water.

Under the decrees, Respondent Seven Rivers Farms, Inc. ("Seven Rivers") was entitled to pump (divert) from the shallow wells 10,155.25 acre feet during the five year period commencing January 1, 1967.

The watermaster moved for an order to show cause against Seven Rivers and its officers alleging that during the five year period, by August 15, 1971 Seven Rivers had diverted a total of 10,330.92 acre feet, an excess of 175.67 acre feet. An adjudication of civil and criminal contempt was sought together with appropriate orders and sanctions.

Following a hearing, the court rendered its decision, and found Seven Rivers and its officers in civil contempt. Provision was made for offsetting the excess during the next five year period, and continued a previously entered injunction against excessive diversions. In a separate order, Seven Rivers was adjudged guilty of criminal contempt, although its officers were adjudged not guilty, and was fined $1,000.00. Seven Rivers and its officers have appealed.

We will first deal with the civil contempt issues. Water meters on two shallow wells were inoperative for a time. The watermaster calculated the amount of water pumped from those wells during those periods based upon gas consumption and tests of the amount of gas required to pump a given amount of water. The amount of unmetered water is relatively small—about three percent of the total diversion. The court below found the total diversion to be as alleged by the watermaster. In reaching this result, the total metered diversion, plus an amount determined by gas consumption in the manner we have described, was taken into account.

Contemnors do not seem to claim that the court's finding of the amount of total diversion is unsupported by substantial evidence. Rather they assert that having taken into account a portion of the diversion based upon gas consumption, the entire computation should have been predicated on gas consumption. Such a computation, which they introduced, shows the permissible diversion was not exceeded. Alternatively, because of certain claimed inaccuracies in the watermaster's tests regarding gas consumption, they assert that evidence of diversion predicated thereon should have been excluded, with the result that the excessive diversion would not have been proven.

In making their argument, contemnors point to evidence which would have sustained findings requested by them which were refused by the trial court, but which, if adopted, would have established the diversion to be within permissible bounds. But the fact that the evidence would have sustained findings of fact different than those made by the trial court, and which, had they been made, would have been favorable to an appellant, is not grounds for reversal. Grants State Bank v. Pouges, 84 N.M. 340, 503 P.2d 320 (1972).

Appellants rely on Lehigh Valley R. Co. v. Mayor and Aldermen, 103 N.J.L. 574, 138 A. 467 (1927) and Tax Review Board v. Weiner, 186 Pa.Super. 47, 140 A.2d 372 (1958). In the former, the determination of water use was held to be arbitrary, inaccurate, uncertain and speculative, but the facts were readily distinguishable. In the latter a measurement of water less precise than that in this case was approved.

As to the contemnors first argument, we are cited to no precedent which indicates the trial court's rulings on admitting evidence or the method of determining diversion was erroneous. We view the matter as being within the trial court's discretion. Concededly, one trial judge might feel that use of gas consumption data throughout, having the virtue of consisten-

cy, was the more accurate measure. Another judge might consider the system used by the trial judge here to be better, since it relies on the best information available. The inquiry on appeal is whether the findings as to total diversion which were made are supported by substantial evidence properly admitted. They were.

Seven Rivers was the owner of wells and water rights other than the shallow wells and rights we have mentioned, which were called the "artesian" rights. Application was made to the State Engineer for leave to combine and comingle water from the artesian and shallow wells upon the land to which they were appurtenant, including in the application a statement that the "appropriation under this application will not exceed the amount adjudicated from either source." On January 19, 1971 the State Engineer entered an order which provided in pertinent part:

" * * *.

"2. The diversion of artesian water under this permit shall be limited to 2,073.0 acre feet per annum measured at the wells * * *."

"3. The diversion of shallow water under this permit shall be limited to 1,740.9 acre feet per annum measured at the wells * * *."

"4. The diversion of a combined total of artesian and shallow water under this permit shall be limited to 3,813.9 acre feet per annum measured at the wells * * *."

Contemnors assert that in April, 1971, they pointed out to the watermaster an error in his records; the error being that a shallow well was recorded as an artesian well; that the error was then corrected; that had it not been corrected, the shallow water diversion shown by the watermaster's records would not exceed that permissible. They claim that the trial court erred in refusing to adopt tendered findings recounting this mistake and its correction. They argue that such findings would have demonstrated the excessive diversion to

have been due to inadvertence and not willfulness.

These arguments are supported neither by the facts nor the law. From a factual standpoint, the trial court found that on July 28, 1971, subsequent to the correction of the mistake, the watermaster advised Seven Rivers, through its officers, of an already existing excessive diversion of shallow water and ordered further diversions to cease. Contemnors nevertheless proceeded as before, diverting an additional 17.27 acre feet, all excessive. These facts and omissions are inconsistent with inadvertence.

On the matter of willfulness, lack of which contemnors assert is demonstrated by the mistake and its correction, much the same is true from a factual standpoint and contemnors further encounter problems with the law.

The watermaster's motion for an order to show cause alleged the excessive diversion to have been willful. If this allegation was not essential, it was surplusage. In State ex rel. Neumann v. Keller, 36 N. M. 81, 8 P.2d 786 (1932), a contempt case, it was argued that the violation alleged was not willful. This court held that it was unnecessary for the accusation to charge the intent, even in criminal contempt. In that case, reliance was placed upon State v. Kayser, 25 N.M. 245, 181 P. 278 (1919) in which this court said:

"It is unnecessary for the accusation to charge the intent in a contempt proceeding. The affidavit is sufficient if the facts therein stated constitute a contempt. If they do, then the intent becomes immaterial. It is the acts done by the contemnor and the acts alone that are looked to in a determination of the offense."

■ The only contra New Mexico precedent we have noticed is dicta in Abbott v. Sherman Mines, Inc., 41 N.M. 531, 71 P.2d 1037 (1937), with which we do not agree. We hold that intent is not an essential element of contempt.

■ It is thus apparent that had the trial court adopted the tendered findings under discussion, the result reached would not necessarily have been affected. It was not error for the trial court to refuse to adopt findings which would not have affected the ultimate result. Grants State Bank v. Pouges, supra.

It appears from the findings of fact and the evidence that although the diversion from the shallow wells exceeded the permissible amount, the diversion from the artesian wells was less than the permissible amount, and that if the two were combined, the total diversion by Seven Rivers from both the shallow and artesian wells would not exceed the permissible total specified in paragraph four of the engineer's order after adding carriage loss and extending it over a five year period.

Contemnors urge that the decrees were uncertain and indefinite upon the subject of whether they were entitled to combine the permissible diversion of the shallow and artesian wells. They say that "[t]o constitute a contempt for violation of the judge's order there must be a clear and unequivocal command and an equally clear and undoubted disobedience."

However this may be, contemnors do not actually argue the existence of any ambiguity in the decrees. Rather, they address themselves to a claimed ambiguity in the State Engineer's order of January 19, 1971, saying that paragraph four thereof would authorize the total diversion there stated even though the total specified in paragraph two might be exceeded, or at least that the contemnors might have, and did, so construe it.

It would probably be a sufficient answer to this argument to point out that contemnors were neither charged with nor found guilty of any violation of the State Engineer's order of January 19, 1971. Nor is any means suggested by which that order could have modified the decrees, violation of which was charged. However, the State Engineer does not raise these questions. He meets the issue head on, claim-

ing that his order was not ambiguous. We will consider the issue in that light.

The alleged ambiguity in the engineer's order centers on paragraph four. When read alone, it is susceptible to the meaning urged by contemnors. The answer to this is that they were not entitled to select that one paragraph to the exclusion of the remainder. In Greer v. Johnson, 83 N.M. 334, 491 P.2d 1145 (1971) we said in respect to an assertion that a judgment was ambiguous that:

"* * * if defendant felt the one sentence he has seized upon contains some ambiguity or uncertainty, then he was obliged to construe this language in the light of the pleadings, *the remaining portions of the judgment,* the findings of fact and conclusions of law. See Dunham v. Stitzberg, 53 N.M. 81, 201 P.2d 1000 (1948). *He was not at liberty to select one clause from the judgment, place his interpretation thereon, rely entirely upon this interpretation, and disregard all the remainder of the decretal portion of the judgment,* the findings of fact and conclusions of law." (Emphasis supplied.)

See also, Hollingsworth v. Hicks, 57 N.M. 336, 258 P.2d 724 (1953); 1 Freeman on Judgments, § 77 (5th Ed. 1925).

■ Considering the decrees, the contemnors' application to the State Engineer and his order of January 19, 1971 in its entirety, we are of the opinion that the claimed ambiguity does not exist. The State Engineer's order alone did not merely limit the total diversion. It limited both the shallow and artesian diversions which made up the total.

If contemnors were truly confused as to the limitations upon the use of their water rights and their obligations concerning them, they were free to petition the engineer or the court for clarification or construction of the order. They did not select this course, although they themselves now complain of ambiguity, and further knew

from about the end of July, 1971, that the watermaster's construction differed from that which they now assert. Having taken unto themselves the function of construing the order, they took with it the attending risk of being wrong. McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

We find no error in the trial court's adjudication of civil contempt in respect to Seven Rivers and its officers, and turn to a consideration of the determination that the corporate respondent was guilty of criminal contempt.

Seven Rivers argues that as to the criminal contempt, the proceedings below should have been attended with some of the trappings of a criminal trial. It urges only that it should have been charged by an information and given a jury trial. Our consideration is limited to those aspects.

The record, so far as here pertinent, discloses that at the outset of trial the contemnors moved for dismissal on the grounds that the proceedings were for criminal contempt and could therefore only proceed by information. The court stated it considered them to be both civil and criminal. It inquired as to the maximum penalty which the engineer would seek against Seven Rivers and was told a fine of $1,000.00 would be sought. The court thereupon overruled the motion, stating that the maximum penalty which would be considered would not exceed $1,000.00, and held the acts charged to amount to a petty offense.

Seven Rivers first argues that it had a right to trial by jury under the Sixth and Fourteenth Amendments to the Constitution of the United States. No jury trial was specifically demanded or requested.

We have nothing to add to our previous statements on classification of contempts as civil or criminal. State v. Our Chapel of Memories of New Mexico, Inc., 74 N. M. 201, 392 P.2d 347 (1964); International Min. & C. Corp. v. Local 177, U.S. & A.P.

W., 74 N.M. 195, 392 P.2d 343 (1964); State v. Greenwood, 63 N.M. 156, 315 P.2d 223 (1957); Costilla Co. v. Allen, 15 N.M. 528, 110 P. 847 (1910). There is no question but that the limb of the case under discussion is a true criminal contempt, although other portions were civil. No objection is now made to their having been heard together. State v. Our Chapel of Memories of New Mexico, Inc., supra.

■ It is doubtful if any such right as Seven Rivers claims is accorded by the laws or Constitution of New Mexico. State v. Marrujo, 79 N.M. 363, 443 P.2d 856 (1968) and even if such right had existed, under our law it would have been waived under the circumstances here present. Id. Seven Rivers relies primarily on federal cases dealing with rights arising under the United States Constitution.

The Constitution of the United States, Art. III, § 2, provides that:

"The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury * * *."

The pertinent section of the Sixth Amendment, held applicable to the states in Duncan v. Louisiana, 391 U.S. 145, 88 S. Ct. 1444, 20 L.Ed.2d 491 (1968), declares that:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State * * *."

In Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), Cheff had demanded trial by jury which had been denied, and was sentenced to six months imprisonment for criminal contempt. The court held that, assuming criminal contempt proceedings to be criminal actions falling within the requirements of Article III and the Sixth Amendment, the right to trial by jury did not extend to petty offenses and that

"* * * sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof."

In Bloom v. Illinois, 391 U.S. 194, 88 S. Ct. 1477, 20 L.Ed.2d 522 (1968) the court held that a state court conviction of criminal contempt with a sentence of imprisonment for twenty-four months constituted a serious offense with the constitutional right of trial by jury.

It thus seems clear that in federal criminal contempt proceedings there is no right to trial by jury for petty offenses and that petty offenses are those in which imprisonment for six months or less is involved. On the other hand there is a right to trial by jury in situations where serious offenses are involved. Seven Rivers, a corporation, cannot be imprisoned, and we are only concerned with whether a fine of $1,000.00 is "petty" or "serious" under the facts in this case. The federal courts do not seem to have been confronted with this problem and there is a dearth of authority on this score. Some guidelines were laid down in District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937) where the court held that in determining whether an offense is a petty offense that constitutionally may be tried without a jury, the severity of the penalty inflictable, as well as the moral quality of the act and its relation to common law crimes, should be considered.

In Bloom the court said:

"Under the rule in Cheff, when the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense."

The offense with which Seven Rivers was charged was not indictable at common law. Its moral quality is relatively inoffensive. In Clawans it is said that changing attitudes may cause a penalty once regarded as mild, such as the lash and the stocks, may come to be viewed as harsh.

Conversely, we believe that a fine which might once have been considered severe or burdensome, such as $1,000.00, might now be felt to be mild. We do not consider the fine imposed here to be very substantial or burdensome.

Clawans is also authority for the proposition that in considering whether an offense or penalty is "petty" or "serious", reference may be had to statutory criminal law for purposes of comparison. This is the approach taken in Cheff.

In New Mexico crimes are classified by statute. So far as here pertinent, a misdemeanor is a crime for which a sentence of imprisonment for more than six months, but less than one year, is authorized. § 40A–1–6B., N.M.S.A.1953. A fine of not more than $1,000.00 may also be imposed. § 40A–29–4, subd. A., N.M.S.A.1953. A petty misdemeanor is one for which a sentence of six months or less is authorized. § 40A–1–6C., N.M.S.A.1953, and a fine of not more than $100.00 may also be imposed, § 40A–29–4B., N.M.S.A.1953.

Seven Rivers argues that inasmuch as the federal courts require trial by jury, unless waived, where sentences for criminal contempt exceed six months imprisonment, that we need only refer to New Mexico statutes to find the corresponding permissible fine. This method would light upon our petty misdemeanors, which carry sentences for six months or less. Seven Rivers points out that the maximum permissible fine for petty misdemeanors is $100.00 and that therefore a fine of over $100.00 involves a "serious" offense with an attendant federally protected right to trial by jury. We do not agree.

Clawans, although permitting reference to statutory crimes and punishment, further enjoins us to use some modicum of common sense and maintain contact with reality. We can visualize nothing which would convince us that a crime was "serious" simply because it involved a fine of more than $100.00.

■ As matters now stand, if a case arose in which the contemnor was, or was in jeopardy of being, imprisoned for more than six months, we would be bound, under the federal cases we have cited, to hold that he had a federal constitutional right to trial by jury. But where, as here, the sole punishment of the criminal contemnor is a fine we are free to make our own determination as to what is a "petty" and what is a "serious" offense, guided by the standards of Clawans and other federal cases. In State v. Marrujo, supra, we hold that a misdemeanor charge, whether petty or ordinary, is not "serious" but is rather "petty." We now hold that so long as the fine which is, or may be, imposed is not more than $1,000.00, there is no federal constitutional right to jury trial.

■ In the case at hand Seven Rivers was never in the slightest jeopardy of being fined more than $1,000.00, under the trial judge's ruling made at the outset when the question arose. The learned trial judge obviously equated "petty offense" within the meaning of the federal cases we have mentioned, with misdemeanors, both ordinary and petty, under New Mexico statutes. In this he did not err.

■ Finally Seven Rivers argues that "[s]ince the criminal charges pressed against the corporation constituted a 'serious offense' for the purposes of jury trial, its dimensions should carry it within the provisions of Article II, Section 14 of the New Mexico Constitution requiring an information for an '. . . infamous crime.' "

We have already held that, gauged by the amount of the fine, this was not a "serious" offense. We do observe however that this identical assertion was answered by our opinion in State v. Our Chapel of Memories of New Mexico, Inc., supra. There the same contention was made and the court, after holding that the contempt there under appeal was at least partially criminal, made the following apt quotation:

"The purpose of a criminal information was said in State v. Lott, 73 N.M. 280, 387 P.2d 855, to be to furnish the ac-

# 796

cused with such a description of the charge against him as will enable him to make a defense. We think the charge in the instant case meets that requirement. Furthermore, the defendants might have, but failed to ask for a bill of particulars and will, therefore, not be heard to complain of a deficiency in the charge against them." (Citation omitted.)

In this case the watermaster's motion for an order to show cause was immeasurably more informative as to the nature and cause of the accusation than an ordinary information would have been. Seven Rivers did not contend at the outset, nor does it contend now, that it was not fully apprised of the charges so as to be enabled to make a defense.

Thus Seven Rivers was not entitled to be proceeded against by information, but was not prejudiced in any case.

In State v. Our Chapel of Memories of New Mexico, Inc., supra, the court made the following statement that seems pertinent here:

"The forms of contempt and many of the leading cases were discussed at length in Jencks v. Goforth, 57 N.M. 627, 261 P.2d 655, and we deem it unnecessary to repeat the discussion here. Under analogous facts we said in Jencks:

'Since actions in contempt are sui generis, we are not forced into the technicalities of strict application of either the criminal or the civil law.'

"The orderly process of law demands that respect and compliance be given to orders issued by courts possessed of jurisdiction of the persons and of the subject matter and one who defies the order of a court having jurisdiction does so at his peril."

The Order of Civil Contempt and the Order of Criminal Contempt are affirmed.

It is so ordered.

McMANUS, C. J., and MONTOYA, J., concur.