556 P.2d 359

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Lorraine SANCHEZ, Defendant,**

**Sue Slater, Contemnor-Appellant.**

**No. 2521.**

Court of Appeals of New Mexico.

Oct. 26, 1976.

674

Jan A. Hartke, Acting Chief Public Defender, Bruce L. Herr, App. Defender, Reginald J. Storment, Asst. App. Defender, Steven G. Farber, Asst. Public Defender, Santa Fe, for contemnor-appellant.

Toney Anaya, Atty. Gen., Paquin M. Terrazas, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

During the trial of Lorraine Sanchez on a charge of murdering Pete Romo, the defense called Sue Slater as a witness. During Slater's cross-examination she refused to answer certain questions of the prosecutor. The trial court held her in contempt of court. She appeals. The issues are: (1) the number of contempts; (2) the sentences for the contempts; and (3) the summary contempt procedure.

*Number of Contempts*

Slater was found to have committed three contempts on the basis of her re-

fusal to answer three questions. She asserts the three questions she refused to answer sought to establish a single fact—threats by Sanchez. Accordingly, she contends there was but one contempt.

*Yates v. United States,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957) states:

"A witness, of course, cannot 'pick and choose' the questions to which an answer will be given. The management of the trial rests with the judge and no party can be permitted to usurp that function. See *United States v. Gates,* 2 Cir., 176 F.2d 78, 80. However, it is equally clear that the prosecution cannot multiply contempts by repeated questioning on the same subject of inquiry within which a recalcitrant witness already has refused answers. See *United States v. Orman,* 3 Cir., 207 F.2d 148.

" . . . [W]here a witness draws the lines of refusal . . . by declining to answer questions within a generally defined area of interrogation, the prosecutor cannot multiply contempts by further questions within that area."

First, Slater refused to answer whether she had been threatened by Sanchez, explaining that she feared for her life if she answered.

Second, Slater refused to answer whether she had overheard a threat to Romo by Sanchez. The refusal was on "[t]he grounds I just told you."

Third, Slater answered "Yes" to the question: "Are any of the people you are afraid for your life of in the Courtroom today?" She refused to answer questions seeking identification of those people.

In one sense the questions to which answers were refused were directed to threats by Sanchez. However, by answers to other questions, Slater distinguished between actions of Sanchez toward herself and actions of Sanchez toward Romo. She consistently refused to answer questions designed to establish whether Sanchez had threatened her. She did answer questions directed to the relationship between San-

chez and Romo. She testified about a knife that Romo carried; testified that she pleaded with Romo to take a knife or gun with him on the morning of Romo's killing; explained that Sanchez and Romo "had an argument"; that Sanchez "was causing trouble" and that Slater was afraid for Romo because "of the conversations he had said to me in the last weeks."

The first and second questions involved different subjects of inquiry. The second question came within a general subject area on which she testified. The first and second questions involved two contempts, not one. The third question involved the same subject of inquiry involved in the first and second questions. It was not a separate contempt. There were two contempts, but not three.

*Sentence for the Contempts*

■ After the first contempt, the trial court sentenced Slater to 90 days in the county jail. After the second and third contempts found by the trial court, Slater was sentenced to 90 days in the county jail for each, to be served concurrently, but consecutive to the first contempt sentence. Having held that only two contempts occurred, we consider this issue on the basis that Slater has received two 90-day county jail sentences to be served consecutively.

Slater contends that six months in the county jail is so arbitrary and excessive that she has been deprived of due process of law. She contends this Court should modify the sentence.

The Court of Appeals exercises appellate jurisdiction as provided by law. N.M. Const., Art. VI, § 29. We have not been referred to New Mexico authority which empowers this Court to modify a sentence nor do we know of such authority. Section 41–15–5, N.M.S.A.1953 (2d Repl. Vol. 6) indicates we do not have such authority. The federal cases on which Slater relies are not applicable since they involve the authority of federal courts under federal law.

New Mexico decisions involving contempts have reviewed contempt sentences for arbitrariness. *State v. Our Chapel of Memories of New Mexico, Inc.,* 74 N.M. 201, 392 P.2d 347 (1964); *Jencks v. Goforth,* 57 N.M. 627, 261 P.2d 655 (1953). *Jencks* involved a habeas corpus petition filed in the Supreme Court. *Our Chapel of Memories* was an appeal from a judgment finding defendants in contempt and imposing penalties. It is not clear whether any issue as to the appropriateness of the punishment was raised in the trial court.

The record and the contempt transcript do not show that any issue was presented to the trial court concerning an arbitrary or excessive sentence. The issue is raised for the first time on appeal. Hundreds of cases cited in New Mexico Digest, Criminal Law, ☞1028–1042, have applied the general rule that issues cannot be raised for the first time on appeal. We are not concerned here with exceptions to that rule. See N.M.Crim.App. 308; *DesGeorges v. Grainger,* 76 N.M. 52, 412 P.2d 6 (1966).

*State v. Williams,* 50 N.M. 28, 168 P.2d 850 (1946) involved the punishment imposed for driving while under the influence of intoxicating liquor. In addition to a sentence and a fine, the trial court ordered that defendant's driver's license "be taken up" for one year. Defendant attempted to appeal the driver's license provision. The Supreme Court held the issue of the trial court's authority to require surrender of the driver's license was not an appellate issue because not raised in the trial court. *Williams* required that a penalty issue be raised in the trial court before it would be considered on appeal. Accordingly, we hold that the propriety of Slater's sentences are not before us for review, the issue not having been raised in the trial court. Compare, *State v. Lott,* 73 N.M. 280, 387 P.2d 855 (1963); *State v. Tipton,* 73 N.M. 24, 385 P.2d 355 (1963).

Should the issue be properly before us, we hold there was no abuse of discretion. It is not claimed that Slater's sentences were not authorized under the law. See *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). The record

shows that the trial court informed Slater of possible consequences if she persisted in a refusal to answer. By withholding answers to the questions, Slater deprived the State of evidence which may have borne directly on the charge of first degree murder. Sanchez was convicted of manslaughter. See *State v. Our Chapel of Memories of New Mexico, Inc.,* supra.

*Summary Contempt Procedure*

After Slater refused to answer the first question (whether she had been threatened by Sanchez) the trial court inquired as to her basis for refusing to answer and indicated she could confer with her attorney before answering. The response was that the refusal to answer was not based on any claim of privilege. With no claim of privilege, the trial court advised Slater that she must answer the question, that if she did not she could be held in contempt of court and sentenced to a term in the county jail.

Questioning by the prosecution established that the refusal to answer was based on Slater's fear for her life. The trial court again advised Slater that she might have a basis for refusing to answer under a claim of privilege. Slater again disavowed any claim of privilege. The trial court directed Slater to answer the question and directed that the question be repeated to avoid any misunderstanding on Slater's part. The question was repeated; Slater again refused to answer. The trial court asked Slater if she understood that if she refused to answer "you can and will be held in contempt of court?" Slater stated she understood and again declined to answer. The trial court found her in contempt of court.

A similar careful procedure was followed by the trial court before finding Slater in contempt for refusing to answer the second question (whether she had overheard a threat to Romo by Sanchez).

After imposing sentence for the first contempt, the trial court stated: "I will suspend that sentence and allow you to purge yourself of that finding of contempt of

Court if you resume the witness stand and if you answer the question that counsel asked you previously and which you declined to answer." Before imposing sentence for the second contempt, the trial court declared a fifteen-minute recess to allow Slater to confer with her counsel and to reflect on whether she should answer the second question. The trial court reminded Slater that she could purge herself of the first contempt.

After the recess, Slater's counsel asked that the "exact" questions be read back to Slater. The trial court agreed and then stated the questions. On appeal, Slater contends she was deprived of due process because the trial court stated the questions rather than having them read back by the reporter. Slater asserts "it is at best unclear whether appellant [Slater] was accorded adequate notice of the charges". The contention is frivolous. The record shows the care with which the trial court proceeded to make sure that Slater understood the question she refused to answer and understood that she could be held in contempt if she persisted in her refusal to answer. As to the trial court stating the two questions rather than having the reporter read the questions, Slater had no objection to this procedure. *State v. Trimble,* 78 N. M. 346, 431 P.2d 488 (1967).

After the questions were stated by the trial court, Slater's counsel informed the trial court that she would not answer. Sentence was imposed for the second contempt. The trial court made it clear that Slater could purge herself of the contempt by answering the questions in the presence of the jury. The formal order states that, to purge herself, Slater must answer the questions in the presence of the jury before the defense case was rested.

Slater's next three contentions were raised prior to imposition of the contempt sentences.

1. The trial court was requested to specify whether the contempt was civil or criminal. The trial court answered that

the contempt was for willful refusal to answer proper questions in the presence of the court for which there could be a penalty of jail time not exceeding six months, a fine not to exceed $1,000.00 or both. On appeal, Slater contends that she was denied due process because the trial court did not put a label of civil or criminal contempt on the proceedings. The contempt was criminal. See *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975). However, the failure of the trial court to label the proceedings was not error; both civil and criminal contempt can be tried in the same proceedings. *State v. Our Chapel of Memories of New Mexico, Inc.,* supra. The record shows that Slater had notice that her refusal to answer would be a contempt and that sanctions in the form of a jail sentence or fine might be imposed. Having been given notice of the contempts and possible penalties, Slater was not deprived of due process on a theory of lack of notice.

■ 2. The trial court was asked not to handle the matter summarily. Slater asked that she be given an opportunity to prepare a defense and be heard before another court. Slater recognizes that a refusal to answer questions in the presence of the court is a proper matter to be dealt with summarily, particularly where, as here, she was given opportunity to explain the basis of her refusal to the court. *United States v. Wilson,* supra; *State v. Clark,* 56 N.M. 123, 241 P.2d 328 (1952). She asserts, however, that her constitutional rights to be heard and to present a defense were diluted by the summary procedure. See *Widger v. United States,* 244 F.2d 103 (5th Cir. 1957). The "dilution" argued by Slater goes to burden of proof beyond a reasonable doubt and proof of Slater's intent. The record is uncontradicted—Slater did refuse to answer the questions; her intent was unambiguously established when she was given the opportunity to purge herself but refused to do so. See *United*

*States v. Wilson,* supra, footnote 7. Slater also argues that she should have been given opportunity to show the trial court why she should be excused from answering the questions. Slater was given such an opportunity and made no showing to the trial court why further opportunity was needed.

There was no violation of due process on the basis that the trial court preceeded summarily.

■ 3. Slater asked the trial judge to recuse himself on the basis that the contempts occurred during the course of "a very long, tiring trial" and "the Court could be emotionally involved". The contention is that Slater was denied due process because the judge refused to recuse himself. There are no facts supporting the claim. The judge was not required as a matter of law to recuse himself in a summary contempt matter. See *United States v. Wilson,* supra; *Wollen v. State,* 86 N.M. 1, 518 P.2d 960 (1974); *State v. Clark,* supra.

■ Included among the procedural claims is the contention that the trial court failed to exercise the least possible power adequate to the end proposed. Since the record shows the trial court's purpose was to punish Slater for "intentional obstructions . . . that literally disrupted the progress of the trial" *(United States v. Wilson,* supra), this claim is a contention that the sentences were excessive. We have previously held that this issue was never raised in the trial court and that the sentences did not amount to an abuse of discretion.

The judgment and sentences for contempt in connection with questions 1 and 2 are affirmed. The judgment and sentence for contempt in connection with question 3 are reversed because the refusal to answer question 3 was not a separate contempt.

IT IS SO ORDERED.

HENDLEY and SUTIN, JJ., concur.