714 P.2d 188

**In the Matter of Summary Contempt Proceedings Against Michael Tom CHERRYHOMES, Contemnor-Appellant.**

No. 8248.

Court of Appeals of New Mexico.

Nov. 26, 1985.

Certiorari Denied Feb. 10, 1986.

See also 713 P.2d 556.

Tom Cherryhomes, Carlsbad, pro se.

Paul G. Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for State of New Mexico.

## OPINION

HENDLEY, Judge.

Michael Tom Cherryhomes appeals from his summary conviction for direct criminal contempt. We affirm, but, because of the large fine imposed, we remand this case to the trial court for further consideration.

**Facts**

Cherryhomes was trial counsel in a criminal case before Judge Harvey W. Fort. During the course of the proceedings, Cherryhomes attempted to bring in certain evidence which he felt would impeach the credibility of one of the state's witnesses. The jury was excused, and Cherryhomes began his argument to the court. Cherryhomes was attempting to show that there was a verdict of not guilty in a prior case in which this witness had testified. The witness had testified as an expert in drug analysis in the prior case, and was testifying in the same capacity in the proceedings before Judge Fort. Cherryhomes seemed to be attempting to insinuate that the prior verdict was one of acquittal and that the acquittal was a result of this witness' testimony. The exchange which ensued led to the contempt order against Cherryhomes which is the subject of this appeal. At issue in this exchange was whether the earlier trial had resulted in a jury verdict of acquittal or in a directed verdict by the court.

COURT: And does this, does this file show, and that's what the court's looking for, that the jury made a finding that they did not believe the witness, or did they just make a finding of not guilty?

CHERRYHOMES: What do you think the verdict form says, Judge?

COURT: All right.

CHERRYHOMES: Do you think it has a special verdict form?

COURT: I don't know.

CHERRYHOMES: Like they do in Texas on findings of fact?

COURT: I, I'm asking you a question, counselor.

CHERRYHOMES: It says we find the defendant not guilty, signed by the foreman.

COURT: Keep your voice down, will you counselor?

CHERRYHOMES: Sure, if you want to insult my intelligence, I'm not saying I'm an intelligent person, but what little I have, I'm entitled not to be insulted on. The verdict says not—

COURT: Yes, counselor.

CHERRYHOMES: Guilty. It does not say we find that Miss Ehart should be [inaudible]. It doesn't say anything but not guilty. She's a witness that file pointed out. Nobody can contradict it. You were the judge.

Shortly thereafter, Cherryhomes continued with his belligerent behavior.

COURT: And the jury, what, what the court is trying to tell you, if you will just keep quiet long enough for me to make a record, is that there's nothing in the file in the jury verdict that says on what basis they found. They may have found—

CHERRYHOMES: Who cares, Judge?

COURT: All right, just a moment, counselor, and I'm going to order you not to say anything when I talk. You are disrupting the orderly pro—get back to where you were and do not approach the bench. I am ordering you to go back to that witness stand, I mean to go back to that rostrum and do not approach the bench. Do you hear me, counselor? Let the record show that counselor is not moving.

CHERRYHOMES: Oh, I'm moving.

COURT: Let the record show that counselor is moving very slow.

CHERRYHOMES: I'm just not moving very fast.

COURT: Very slow, very slow.

CHERRYHOMES: How fast would you like me to move, Judge? Would you like me to jump?

COURT: Counselor—

CHERRYHOMES: I might fall.

COURT: Counselor—

CHERRYHOMES: One of these days, Judge, you're going to learn that you're a human, and that these people in court are human, and you're not [inaudible].

COURT: The court is ordering you, the court is ordering you to keep quiet while I speak.

CHERRYHOMES: Speak.

COURT: If you interrupt me one more time, the court is going to find you in contempt of court, and the fine will not exceed $50,000.

CHERRYHOMES: Great.

The court then ordered Cherryhomes not to use the file from the earlier case. Cherryhomes asked the court to take judicial notice of it.

COURT: When you talk to me do not come forward like you are coming counselor, or I will consider that a direct criminal contempt of court. I am ordering you—

CHERRYHOMES: I don't care what you consider—

COURT: I am ordering you, I am ordering you not to approach the bench.

CHERRYHOMES: I'm not approaching the bench, Your Honor. There are 2, 4, 6, 8, 10, 12, 14 people in here that can say whether I'm approaching the bench or not.

COURT: The court is ordering you not to walk toward me when you talk to me. That's all I said. Thank you.

CHERRYHOMES: Thank you. I'm asking the court not to interrupt me on my argument, too. Just as I do not interrupt the court.

The court warned Cherryhomes twice more that he could be held in contempt if he persisted in using the file or in approaching the bench.

CHERRYHOMES: Judge, that's three $50,000 threats you've made. You want it now, Judge? Let's make it $300,000.

COURT: No, they're not threats, counselor, they're warnings.

CHERRYHOMES: No, they're threats, Your Honor. I perceive those as a threat by your manner and your attitude.

COURT: The court must warn you what you are doing wrong.

CHERRYHOMES: Your Honor, I'm representing Frank Dominguez, and I'm going to see that he gets a fair trial to the best of my ability. He's not getting a fair trial right now because of you. He hasn't received a fair trial all day because of you. You've made comments all day in front of the whole jury panel, now that twelve members of the jury, about me, about you can't ask that question, you can't do this. Now you're trying to tell them it's improper.

After this the court again warned Cherryhomes that he could be found in contempt. Cherryhomes then made a tender for the record.

COURT: And if I remember correctly, counselor, this was a directed verdict by the court. Is that, well, you may answer the question or not, the court is asking you.

CHERRYHOMES: I'm not testifying here, Judge.

COURT: Oh, you're not testifying.

CHERRYHOMES: No, I'm not.

COURT: Oh, okay. The court is asking you, counselor, was this a directed verdict by the court based upon the fact that there was not a slip of paper in the, uh, to identify?

CHERRYHOMES: What does the verdict form say, Your Honor?

COURT: The court is asking you a question, counselor.

CHERRYHOMES: I'm answering the question. The verdict form says not guilty. Does it say directed?

COURT: No, it doesn't.

CHERRYHOMES: Well?

COURT: I'm asking you if this wasn't a directed verdict.

CHERRYHOMES: What difference does it make, Judge?

COURT: Because the court is asking you, counselor. And not only that, and let's get this straight, the court is now ordering you to answer the question.

CHERRYHOMES: I'm refusing to.

COURT: If you refuse to answer the question, the court will find that this is disrupting the orderly process of this court. You will be found in direct criminal contempt of court.

CHERRYHOMES: Well, just a minute—

COURT: And fined not to exceed $50,-000.

CHERRYHOMES: (Inaudible.)

COURT: The court is now asking you if this was not a case in which the court directed a verdict, because there was no identifying slip of paper in the material.

CHERRYHOMES: If the court's alleging that I'm going to be charged with direct criminal contempt, I demand a hearing, as I'm entitled to do under the law.

COURT: The court—

CHERRYHOMES: State versus Driscoll [inaudible].

COURT: The court must find, the court is not going to listen to any more. If I find you in direct criminal contempt of court, you are not entitled to any hearing. Now, the court is ordering you to answer the question. Was this a directed verdict, and was it because, in this State versus Cauffman, that there was not a slip of paper, uh, that they could identify the substance with?

CHERRYHOMES: I've already answered that question.

COURT: And what was your answer, counselor?

CHERRYHOMES: The verdict says not guilty. And that's what, that's the tender I want to make, that's the evidence I want to get before the jury, because not guilty's not guilty, whether you [inaudible].

COURT: And the court, and the court is ordering you to answer the question. The court is saying that you are disrupting the orderly process of this court, and the court is going to find you in direct criminal contempt· of court, and I'm going to give you about fifteen minutes, because we're going to take a break, and I'm going to ask my court reporter to, to

get those tapes on State versus Charles Cauffman.

CHERRYHOMES: Well, gee, Your Honor, since it's already on tape, you don't need my answer. The tapes will answer it. And it doesn't make any difference.

COURT: And [inaudible] court's in recess for fifteen minutes.

CHERRYHOMES: Fifteen minutes or fifteen years, because I'm not answering the question any more than I already have. I've answered it, and that's it. I'm not on trial here. I'm an officer of the court. The court has its own file there. It can read its own verdict.

COURT: You haven't acted like an officer of the court. Are we still on record?

COURT REPORTER: Yes, sir.

COURT: Yes. You haven't acted like an officer of the court all day.

CHERRYHOMES: And you haven't acted like a jurist all day, Your Honor. So tit for tat.

COURT: The court is going to order you not to speak in that tone of voice in this courtroom. The next time you talk in that tone of voice, with that smart-alecky answer, the court is going to find that you are in direct criminal contempt of court, and fine you not to exceed $50,000. Now, court's in recess, counselor. Court's in recess for about fifteen minutes.

CHERRYHOMES: Do I understand I only have to write a check for $200,000?

Cherryhomes was asked at least seven times to tell the court what the disposition of the prior case was. He refused a direct order to answer that question. Cherryhomes was warned at least six times that he would be held in contempt if he failed to answer the question. He was warned that he could be fined in an amount not to exceed $50,000.

As indicated above, the trial judge called a fifteen-minute recess so that he could listen to the tapes of the prior trial and obtain an answer to his question. He found that the case in question had ended in a directed verdict. The trial judge then found Cherryhomes in direct criminal con-

tempt for the way he had acted, and for his refusal to answer the question put to him. Cherryhomes was fined $10,000. He was granted the right of allocution.

**Discussion**

Cherryhomes raises three issues in his appeal: 1) Was his conduct contemptuous? 2) Was a summary proceeding proper under the circumstances? 3) Was he entitled to a jury trial before a fine of $10,000 could be imposed?

■ Our review of the record clearly indicates that Cherryhomes' conduct was contemptuous. Cherryhomes refused to answer the court's question, even when ordered to directly. His manner was belligerent. Cherryhomes' refusal to answer the court's questions constituted criminal contempt. *State v. Sanchez*, 89 N.M. 673, 556 P.2d 359 (Ct.App.1976). Cherryhomes, having refused to answer in the presence of the court, committed direct contempt. *In re Klecan*, 93 N.M. 637, 603 P.2d 1094 (1979).

■ Because Cherryhomes committed direct criminal contempt, the trial court could proceed against him summarily. *State v. Diamond*, 94 N.M. 118, 607 P.2d 656 (Ct. App.1980). Cherryhomes' behavior clearly involved a disruption of the trial and blatant disrespect for the court. *Klecan; State v. Driscoll*, 89 N.M. 541, 555 P.2d 136 (1976). Cherryhomes was warned at least six times that he would be held in contempt if he continued to refuse to answer the court. Cherryhomes was given the opportunity to speak. Our review of the record shows that Judge Fort exercised restraint and patience in this case. The trial court, therefore, did not err in the procedure it employed in finding Cherryhomes in contempt. *Klecan.* A summary proceeding was proper under the circumstances.

■ Cherryhomes was fined $10,000. In *Seven Rivers Farm, Inc. v. Reynolds*, 84 N.M. 789, 508 P.2d 1276 (1973), the Supreme Court of New Mexico held that a fine in excess of $1,000 gives the defendant the right to a jury trial. Therefore, since

Cherryhomes' fine exceeded $1,000, he had the right to a jury trial on the contempt charge. The fine imposed by the court was excessive, and cannot stand.

Although this Court lacks the authority to modify Cherryhomes' sentence, our determination that the fine was excessive does not put an end to our inquiry. *State v. Case*, 100 N.M. 173, 667 P.2d 978 (Ct. App.1983). It is clear that Cherryhomes acted contemptuously in the presence of the court. However, we are not limited to reversal or ordering a jury trial for Cherryhomes as our options in our disposition of this case. *Case* allows this Court to remand to the trial court for further proceedings. At the trial level, the state must choose how it wishes to proceed. The state may opt to proceed by jury trial, or it may opt to impose a fine not to exceed $1,000.

Based on the foregoing, the conviction and sentence for contempt are vacated. This cause is remanded to the trial court with the following instructions:

1. The state is to choose how to proceed in the trial court.

2. The state may choose that Cherryhomes be sentenced for contempt with any fine imposed not to exceed $1,000. Cherryhomes has the right of allocution before imposition of his sentence.

3. The state may choose to proceed by jury trial. Cherryhomes has the right to counsel at this proceeding, and the fine imposed may exceed $1,000.

IT IS SO ORDERED.

DONNELLY, C.J., and GARCIA, J., concur.

HENDLEY, J., specially concurs.

HENDLEY, Judge (specially concurring).

I am specially concurring because what I write could be considered not to be a proper part of the opinion.

I am aware of the recent disciplinary proceedings against Cherryhomes. He was formally reprimanded by the Disciplinary Board for, among other things, making an obscene remark directed to Judge Fort. *In re Cherryhomes*, 24 SBB 1069, 188 N.M. 714 (1985). This incident occurred after the exchanges quoted in the foregoing opinion. I disagree with the Board's questioning of the judge's conduct in this case. My review of the record shows that Judge Fort exercised restraint and patience while Cherryhomes was belligerent. Judge Fort is commended for the manner in which he handled this unpleasant and difficult situation, which was brought about by Cherryhomes' unreasonable refusal to answer a question put to him by the court.