542 P.2d 1191

**RAINBO BAKING COMPANY OF ALBU-
QUERQUE, INCORPORATED, a Foreign
Corporation, and Kimbell, Incorporated,
d/b/a Foodway, a Foreign Corporation,
Plaintiffs-Appellees,**

v.

**Eddie APODACA, Defendant-Appellant.**

**No. 1769.**

Court of Appeals of New Mexico.

Oct. 7, 1975.

Rehearing Denied Oct. 24, 1975.

J. Ronald Boyd, Sanchez & Boyd, P. A., Santa Fe, for defendant-appellant.

David R. Sierra, Santa Fe, for plaintiffs-appellees.

## OPINION

SUTIN, Judge.

Plaintiffs were granted summary judgment against defendant in a tort action for fraud, forgery, conversion and embezzlement. Both compensatory and exemplary damages were awarded plaintiffs. Defendant appeals. We reverse.

A. *There was a genuine issue as to a material fact.*

(1) *Plaintiffs' Evidence*

Defendant was a truck salesman for Rainbo Baking Company. He sold bread and cakes and merchandise. Kimbell did business in New Mexico under the name of Foodway. Defendant, as Rainbo's routeman, sold and delivered bread to Foodway stores. Plaintiffs' affidavits and documents show that on June 13, 1973, defendant admitted to the security officer of Kimbell and the district manager of Rainbo that he had forged the signatures on the 'Rainbo invoices and that Foodway did not receive the products listed on these invoices. Defendant was too nervous to write a statement and preferred that the security officer write the facts.

In this statement, defendant admitted that since July, 1971, he had made false delivery tickets for bread and pastries to the Foodway store, stamped the invoice with Foodway's receiving stamp, and forged the employee's signature to the invoice. Foodway did not receive the bread and pastries, even though it paid for them. Whatever was due on these invoices, defendant kept that amount of cash from his cash customers' sales; by way of forged invoice tickets he embezzled approximately $6,240.00 which he used for his own personal gain. This statement was obtained by question and answer. Defendant looked it over, studied it for awhile and then signed it.

Defendant told the security officer he wanted to reimburse Foodway for the money he had stolen. The officer prepared a promissory note to Kimbell in the sum of $6,240.00. Defendant reviewed it and signed it.

Plaintiffs made a prima facie case. The burden shifted to defendant to show there was a genuine factual issue. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972).

(2) *Defendant's Evidence*

In response by way of deposition and affidavit, defendant denied that he did anything wrong. He said that when the security officer accused him of forging signatures on the invoices, he did not answer the accusations. At no time did he admit any forgeries, nor admit that he failed to leave merchandise in accordance with the tickets. Defendant became nervous and

upset by reason of the accusations and was unable to follow the conversation and heard only half of what was said. Defendant did not remember being asked any questions, but he did remember that he made no responses to any questions. When defendant was handed the statement, his mind was so confused he looked at the paper as if he were reading it without actually reading or understanding anything that was written down. At this point, the security officer said: "If you don't want to go along with it, we can go see the District Attorney." That scared and confused defendant even more.

Defendant hoped that if he cooperated with these men he would keep his job. So he told them that he would pay back whatever he owed plaintiffs. When the security officer mentioned a figure of $6200, defendant thought he meant $600 and something, not $6000 and something.

Defendant denied making any of the statements attributed to him in the "voluntary statement" prepared for his signature by Kimbell's security officer, which statements amounted to an admission of embezzlement.

With reference to the promissory note, defendant stated he was threatened with the police and the district attorney; that he was in shock at the time and was afraid to question the figures or the reason for the note.

**(3)** *Defendant met the burden*

■ Defendant met the burden of showing that there was a genuine issue of fact as to plaintiffs' claim of embezzlement, conversion, fraud and forgery. In his affidavit opposing the motion for summary judgment, defendant contended that he did not voluntarily sign the statement and note prepared by Kimbell's, security officer, which note and statement were the sole items of evidence offered by plaintiffs in support of their motion for summary judgment. Defendant claimed he was confused and in shock, and did not understand the contents of the statement or the amount of

the note. Further, he stated that he was threatened with prosecution if he refused to sign.

■ No citation of authority is necessary to state again all of the rules applicable to summary judgment. We need only say that defendant must be given the benefit of all reasonable doubts in determining whether a genuine issue exists. *Goodman v. Brock,* supra. We hold that a genuine issue of material fact exists in plaintiffs' tort action.

**B.** *The trial court mistakenly struck defendants' response affidavit.*

At the time the summary judgment was entered, the trial court struck defendant's affidavit in response to the motion for summary judgment because the affidavit contained "facts and circumstances which were previously the subject of discovery proceedings by Plaintiffs but that at such discovery proceedings the Defendant refused to furnish to the Plaintiffs the requested information".

**1.** *Defendant did not refuse to furnish plaintiffs information.*

The discovery proceedings consisted of (1) interrogatories submitted by plaintiffs to defendant, and (2) the deposition of defendant taken by plaintiffs.

(1) Plaintiffs submitted nine written interrogatories to defendant. In answer to seven of the nine interrogatories, defendant answered: "Question asked for privileged information protected by the Fifth Amendment to the United States Constitution." The defendant refused to furnish the requested information to protect a claimed constitutional privilege.

Subsequently, at the second deposition hearing, defendant voluntarily answered all interrogatories orally except three upon which he claimed the Fifth Amendment privilege.

(2) On March 26, 1974, pursuant to notice, plaintiffs took defendant's deposition. In pertinent places, defendant asserted the privilege of the Fifth Amendment. On

May 21, 1974, the trial court ordered defendant to appear at a deposition hearing and answer all questions found on certain pages of the March 26th deposition. The court had this authority. Section 21-1-1(37)(a), N.M.S.A.1953 (Rep.Vol. 4).

On May 29, 1974, defendant appeared at the second deposition hearing and answered all questions except some which extended beyond those ordered by the court. Defendant complied with the order of the court. He did not refuse to furnish plaintiffs the requested information.

2. *Defendant was protected by the Fifth Amendment.*

The Fifth Amendment to the United States Constitution provides in pertinent part:

No person . . . shall be *compelled* in any *criminal case* to be a witness against himself, . . . [Emphasis added.]

See, also, N.M.Const. Art. II, § 15; 20-1-10, N.M.S.A.1953 (Repl.Vol. 4); *State v. Watson,* 82 N.M. 769, 487 P.2d 197 (Ct.App.1971).

■ The Fifth Amendment privilege protects against compelled self-incrimination. It privileges a defendant not to answer questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might tend to incriminate him in future criminal proceedings. Defendant had the right to refuse to answer until he was protected against the use of his compelled answers, and evidence derived therefrom, in any subsequent criminal case in which he might be a defendant. Absent such protection, if defendant is compelled to answer, his answers are inadmissible against him in a later criminal prosecution. *Lefkowitz v. Turley,* 414 U. S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). See, *Apodaca v. Viramontes,* 53 N.M. 514, 212 P.2d 425 (1949); *State v. Watson,* supra.

Defendant was not given any protection against any later criminal prosecution. He had the right to refuse to orally answer three of the interrogatories as well as those questions which extended beyond the order of the court.

■ No authority was cited and we have found none which allows the trial court to strike a response affidavit. On the contrary, the defendant had a duty to resist the motion for summary judgment with whatever evidentiary material which he could produce. *Hamilton v. Hughes,* 64 N.M. 1, 322 P.2d 335 (1958). The trial court must consider such evidentiary material in arriving at its decision to grant or deny the motion for summary judgment.

■ The trial court mistakenly struck defendant's response affidavit.

C. *The trial court improperly ordered payment of reasonable attorney fees and expenses against defendant.*

In its order of May 21, 1974, the trial court ordered defendant to pay to plaintiffs the amount of $150.00 to cover plaintiffs' attorney fees and costs for procuring an order that defendant answer the questions in the deposition taken on March 26, 1974. The money was ordered paid prior to the deposition taken on May 29, 1974. The money was not paid.

The question is: Did the defendant fail to answer the questions in the deposition and be punished pursuant to Rule 37(a)?

■ As pointed out, supra, under Rule 37(a) the trial court had the authority to order defendant to answer any question propounded on oral examination. The rule further provides:

If the motion is granted and if the court finds that the refusal was without substantial justification the court shall require the refusing party or deponent and the party or attorney advising the refusal or either of them to pay to the examining party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees.

The trial court found "that the Defendant did willfully fail to answer questions propounded to the Defendant" during the

deposition of March 26, 1974. This finding falls within the language of Rule 37(a), supra, "that the refusal was without substantial justification."

 However, the defendant did not willfully fail to answer questions propounded. He answered that he claimed the privilege of the Fifth Amendment. We hold that the "refusal" to answer specifically was with "substantial justification".

The application of Rule 37(a) to discovery proceedings required the defendant to seek a ruling of the court on the determination of whether the answer to questions propounded would reasonably tend to incriminate him and are privileged. Section 21-1-1(30)(b), N.M.S.A.1953 (Repl.Vol. 4). This procedure was undertaken. After receipt of the notice of taking his deposition, defendant filed a motion in which he sought protection of the Fifth Amendment and requested an order that the deposition not be taken. The motion was denied.

We do not decide whether the trial court erred in denying this motion. We are confronted with punishment of the defendant for refusal to answer depositional questions without substantial justification. We hold that there was substantial justification.

The trial court improperly assessed attorneys' fees and costs against defendant.

D. *The issue of punitive damages not decided.*

The trial court awarded plaintiffs punitive damages. An award of punitive damages via summary judgment is a matter of first impression. We have been unable to find any authority on this subject. This issue can only arise for review on appeal when this Court affirms a summary judgment for compensatory damages.

Because summary judgment is reversed on other grounds, we leave the matter of punitive damages in suspension.

E. *Other points raised on appeal are without merit.*

Defendant also contended (1) that plaintiffs' complaint failed to state a claim upon which relief can be granted, (2) that the court erred in denying defendant's motion to suppress, (3) that plaintiffs' complaint was insufficiently pled. These contentions are without merit.

Reversed.

It is so ordered.

HENDLEY and LOPEZ, JJ., concur.