625 P.2d 1229

STATE of New Mexico, Plaintiff-Appellee,

v.

Corrine URIOSTE, Defendant,

and

Henry Eloy Marquez, Contemnor-Appellant.

No. 4472.

Court of Appeals of New Mexico.

July 29, 1980.

Certiorari Denied Sept. 10, 1980.

Jeff Bingaman, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for appellee.

John B. Bigelow, Chief Public Defender, Michael Dickman, Asst. Appellate Defender, Santa Fe, for contemnor-appellant.

## OPINION

WALTERS, Judge.

Defendant Marquez, in accordance with a plea and disposition agreement, pled guilty to attempt to commit murder in the first degree, with firearm enhancement, and to conspiracy to commit murder in the first degree. Four other related counts against him were then dismissed. A part of his plea agreement specified:

3. No habitual offender proceedings will be brought against defendant concerning any of the above-mentioned crimes; however, should the defendant be convicted of a felony at any future date these convictions may be used in any habitual offender proceeding.

Defendant was thereafter subpoenaed to testify at the trial of Corrine Urioste, a co-defendant on the charges of the original six-count indictment. He refused to answer four questions, claiming the Fifth Amendment privilege, and was cited for contempt four times. Defendant appeals, arguing (1) that answering the questions would amount to self-incrimination in future habitual offender proceedings; (2) that one of the questions would tend to furnish "a link in the chain of evidence" to show commission of the federal offense of transporting or possessing a firearm by a felon, if such a charge were later brought by the federal government; and (3) that if failure to answer constituted contempt, it was a single contempt only, rather than four separate offenses.

### 1. *The Fifth Amendment Privilege.*

 We held, in *State v. Archunde*, 91 N.M. 682, 579 P.2d 808 (Ct.App.1978), that if a defendant be compelled to answer a question regarding a prior conviction, that admission could not be used against him in a subsequent habitual offender proceeding. Regarding defendant's first claim, then, in addition to the terms of the written plea bargain approved by the trial judge, it is clear that any incriminating answers given by him regarding those convictions could not be used to institute charges against him as an habitual offender. *Archunde, supra.*

However, if such proceedings were brought because of a later felony conviction, all in accordance with the terms of his plea agreement, his convictions on his guilty pleas could be proved by any means available to the prosecutor. *Archunde, supra.*

 With respect to defendant's second contention, we observe that the federal courts of New Mexico are bound by the law of the forum state on matters of a witness's privilege, in *civil* cases. Rule 501, Federal Rules of Evidence, Title 28 U.S.C. Under our ruling in *Rainbo Baking Co. of Albuquerque v. Apodaca*, 88 N.M. 501, 542 P.2d 1191, *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1975), self-incriminating answers which a defendant is compelled to make may not be admitted against him in *any* later criminal prosecution. But that protection only applies to later criminal proceedings in State courts. A potential federal charge of firearm possession or transportation could be proven by the testimony defendant was ordered to give under penalty of contempt in the instant proceedings against his co-defendant, since the federal court is not obliged to exclude it by applying a State rule of privilege in a criminal case. *Robinson v. United States*, 144 F.2d 392 (6th Cir. 1944), *aff'd* 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945), *rehg. den.* 324 U.S. 889, 65 S.Ct. 910, 89 L.Ed. 1437; 325 U.S. 895, 65 S.Ct. 1401, 89 L.Ed. 2006; 326 U.S. 807, 66 S.Ct. 86, 90 L.Ed. 491; 328 U.S. 878, 66 S.Ct. 1017, 90 L.Ed. 1646; 356 U.S. 978, 78 S.Ct. 1133, 2 L.Ed.2d 1145 (1958).

 Thus, the possible effect of self-incrimination in future State actions is illusory. New Mexico decisions have established, as a matter of law, that the defendant who is compelled to testify about criminal activities or prior convictions that might otherwise be self-incriminating in a later proceeding, may not have such evidence admitted against him in those later proceedings. *Archunde, Rainbo, supra.* Protection of the defendant's Fifth Amendment rights in this manner fully compensates for any failure by the State or the trial court to comply with N.M.R.Crim.P. 58, N.M.S.A. 1978, in

cases of the nature presently before us. *Cf. Campos v. State*, 91 N.M. 745, 580 P.2d 966 (1978). But the State prosecutor was without authority to offer immunity from prosecution in the federal court, and none was formally obtained from the United States Attorney. Therefore, the rule of *Rainbo, supra,* and the Erie Doctrine[1] would not insulate defendant from supplying evidence that could incriminate himself in a subsequent federal criminal proceeding.

We note that *Campos, supra,* was concerned with the insufficiency, under Criminal Rule 58, of an oral representation to the witness regarding non-use of self-incriminatory statements in any subsequent habitual offender prosecution. We think the decision of *Campos,* if read to require a written grant of immunity in every case, is distinguishable from the question here presented. Marquez had a written agreement that his plea-bargained convictions could not form the basis of a State habitual offender proceeding unless he were also convicted of another felony at a future date.

■ It is important that we address defendant's contention regarding his exposure to a subsequent State habitual proceeding on the basis of the protection against self-incrimination afforded when one is compelled to answer, rather than by focusing only upon preliminary issue of the nature of the answers sought. As a practical matter, if the answers could not be used to convict, then they were not self-incriminatory. If they were not self-incriminatory, then there was no Fifth Amendment privilege to be asserted toward a prospective habitual offender prosecution under New Mexico laws.

■ It might have been wiser for the trial judge to require the State to grant written immunity before defendant was ordered to answer the questions and held in contempt for refusal to do so. In view of New Mexico's exclusionary rule on this sort of evidence, however, written immunity

was not necessary because defendant's Fifth Amendment rights on later State charges were fully protected *by operation of law.*

However, defendant's fear of self-incrimination hinged on the likelihood of admitting facts sufficient to establish the federal crime of firearm possession or transportation by a felon. The consequence of a possible conviction on a federal charge would be, of course, that the State could then use the federal conviction *and* the plea-bargained state convictions to warrant charging defendant as an habitual offender. Defendant was justifiably concerned.

### 2. *The Contempt Citations.*

Marquez refused to answer whether he was the same person named with Urioste and another defendant in the indictment; whether his signature appeared on his plea and disposition agreement; whether he and co-defendant Urioste talked at her home on November 26th, 27th, or 28th, 1978; and whether he and another went to Chimayo on or about November 27th looking for Ortiz with the intent to kill him after being hired by Urioste to do so.

■ We adhered in *State v. Sanchez,* 89 N.M. 673, 556 P.2d 359 (Ct.App.1976), to the rule of *Yates v. United States,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957), which held that contempts could not be multiplied by repeated questions on the same subject of inquiry that the recalcitrant witness has refused to answer. The four questions asked tied Marquez's involvement in the charges of the original indictment to the counts to which he pled guilty, which in turn tied him to possession or transportation of a firearm in at least the charge of attempt to commit murder. His refusal to answer recognized the singleness of the area of inquiry regarding his criminal conduct, and the inference sought to be drawn from his admissions regarding the guilt of

---

1. *Erie. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." 304 U.S. at 78, 58

S.Ct. at 822, 82 L.Ed. at 1194. Despite the language, "in any case," this decision has been interpreted to apply only in civil matters. *Robinson, supra,* (never overruled).

his co-defendant/conspirator Urioste. They could not be considered separate contempts. And because the answers could have incriminated defendant on a future federal charge, defendant was improperly held in contempt for failure to answer. He had a constitutional right to so refuse.

### 3. *The Sentences Imposed.*

The trial court imposed terms of six months' imprisonment on each sentence of contempt, ordering that two six-month terms be served concurrently with the sentences entered on the guilty pleas and that two six-month terms be served consecutive to those sentences. However, all but one six-month term was suspended and it was ordered that that remaining six-month sentence be served consecutively. Those sentences are reversed because defendant was not guilty of any contempt under the facts of this case.

In examining the original sentences imposed, however, it appears to us that the original terms of this defendant's incarceration will be nearly impossible for prison officials to decipher and administer. In addition to the two charges of the indictment in which he, Urioste, and another were named as co-defendants, to which he pled guilty, he had also pled guilty to two counts of another indictment. He was sentenced on all four charges in two separate judgments entered simultaneously. On the two guilty pleas first mentioned in this Opinion, the trial court suspended a portion of the maximum term on the first charge so that the commitment reads "not less than fifteen (15) years nor more than nine (9) years," and on the second, "not less than one (1) year nor more than five (5) years." The second sentence was to run concurrently with the greater sentence on the first charge, and these sentences were ordered to be served before commencement of the two other sentences to which Marquez pled guilty on the second indictment.

On the latter charges, the court imposed consecutive sentences of "not less than fifteen (15) years nor more than four (4) years, six (6) months" on each of the two counts, to "be served subsequently and consecutively to the sentences imposed" on the charges of the Urioste-Marquez indictment.

Since the sentences for contempt must be vacated, the trial judge and the parties may wish at that time to consider correcting the sentences imposed on defendant's four guilty pleas to make them capable of being carried out. As they now stand, we think, they present an aggregate sentence that cannot be complied with because of the physical and mathematical inability to incarcerate defendant for *not less* than forty-five *but not more* than eighteen years.

The contempt convictions and sentences are reversed and the matter remanded to the trial court for further proceedings in accordance with the decision reached herein.

IT IS SO ORDERED.

LOPEZ and ANDREWS, JJ., concur.