686 P.2d 257

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Phillip BOEGLIN, Defendant-Appellant.**

**No. 7028.**

Court of Appeals of New Mexico.

Feb. 28, 1984.

Paul Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Ellen Bayard, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

NEAL, Judge.

The defendant was granted use immunity in exchange for his testimony at the capital murder trial of his co-defendant, Ralph Earnest. At the trial of Earnest the defendant refused to answer nine questions and the court held him in contempt. For his refusal to answer the first question the court sentenced him to eighteen years, and

to one year for each additional refusal. The total sentence was twenty-six years.

The defendant appealed raising six issues. The first issue was that the immunity order was defective because it limited immunity to *truthful* statements. We agreed and reversed, relying on *New Jersey v. Portash*, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979). The Supreme Court then reversed our decision and remanded this case to us for consideration of the remaining issues. *State v. Boeglin*, 100 N.M. 470, 672 P.2d 643 (1983). We discuss (1) the effect of the defendant's reliance on *State v. Urioste*, 95 N.M. 712, 625 P.2d 1229 (Ct.App.1980); and (2) the trial court's refusal to seal the State's file.

### 1. Reliance on Urioste.

At trial the defendant refused to answer on two grounds: that the immunity order was defective and that under *Urioste* the order was not sufficient to protect him because he could still face federal prosecution. The Supreme Court held that the immunity order was not defective. We now consider the defendant's argument that he could not be held in contempt because in refusing to answer he was relying on *Urioste*.

In *State v. Chavez*, 100 N.M. 612, 673 P.2d 1345 (Ct.App.1983) we held:

The defendant contends that he cannot be held in contempt because under *State v. Urioste*, 95 N.M. 712, 625 P.2d 1229 (Ct.App.1980), he could face federal prosecution on the drug charges. To the extent *Urioste* suggests that a witness who has been granted use immunity may be subject to federal prosecution on the same charges, it is not to be followed.

*Chavez* then adopted the holding of *Murphy v. Waterfront Commission of New York*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964):

[T]he constitutional privilege against self-incrimination protects a state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well as federal law.

■ When the defendant refused to answer *Chavez* had not been decided. *Urioste* was the law in New Mexico. The defendant's refusal to answer, based on *Urioste*, was justified.

In *Murphy*, as here, the petitioners refused to answer, relying on *Feldman v. United States*, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408, 154 A.L.R. 982 (1944). *Murphy* further held:

At the time they refused to answer, however, petitioners had a reasonable fear, based on this Court's decision in *Feldman v. United States*, supra, that the federal authorities might use the answers against them in connection with a federal prosecution. We have now overruled Feldman and held that the Federal Government may make no such use of the answers. Fairness dictates that petitioners should now be afforded an opportunity, in light of this development, to answer the questions.

The order compelling the defendant to answer questions remains intact. However, consistent with *Murphy* we hold that fairness requires that the defendant's contempt convictions be reversed. The defendant should have the opportunity to answer the questions in light of our ruling. *See State v. Chavez*.

### 2. Refusal to seal the State's file.

*Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) held that use and derivative-use immunity is coextensive with the Fifth Amendment privilege against compulsory self-incrimination. Transactional immunity, as opposed to use and derivative-use immunity, is broader than the Fifth Amendment privilege, and is not constitutionally required.

■ The defendant here has been granted use and derivative-use immunity. The State may not make any use of his compelled testimony. *Kastigar*. To insure this the defendant asked the trial court to seal the State's file. The trial court refused. The defendant contends that no contempt conviction can stand because without

sealing the file there is no way for him, or a court, to know what evidence may be developed from his compelled testimony.

Sealing the file, also called certifying the evidence, requires the prosecutor to file a report with the court. In this report the prosecutor details all the evidence he has in hand before the grant of immunity, including documents, affidavits, and other records. Then, at trial, the prosecution would be limited to the evidence certified in the filed report. *See* Note, Standards for Exclusion in Immunity Cases after *Kastigar* and *Zicarelli,* 82 Yale L.J. 171 (1972).

This procedure is not required by *Kastigar. Kastigar,* discussing the federal use-derivative use statute, states:

> One raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources.

406 U.S. at 461–62, 92 S.Ct. at 1665.

 When the State seeks to prosecute a witness who has been granted immunity a proper procedure is to hold a taint hearing so that the prosecutor can affirmatively prove that the evidence sought to be used is independent from the compelled testimony. *United States v. Tantalo,* 680 F.2d 903 (2nd Cir.1982); *United States v. Romano,* 583 F.2d 1 (1st Cir.1978). We hold that a taint hearing is a proper procedure to insure that no use or derivative-use is made of immunized testimony. At the taint hearing, after the witness shows that he has been granted immunity, the prosecutor bears the "heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Kastigar.* As *Kastigar* states:

> This burden of proof, which we affirm as appropriate, is not limited to a negation of taint; rather it imposes on the prosecution the affirmative duty to prove that the evidence is derived from a legitimate source wholly independent of the compelled testimony.

 The defendant's argument here is an interesting one. One case has noted that the practice of sealing the file, or certifying the evidence, is a safeguard against lawlessness by the government. *See In re Weir,* 377 F.Supp. 919 (S.D.Cal.), *aff'd.,* 495 F.2d 879 (9th Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974). The defendant, however, has not cited us to any case, nor have we been able to find one which supports his argument that failure to seal the State's file, in itself, justifies a refusal to answer. We decline to adopt such a rule here. On remand, the defendant may not refuse to answer claiming that the court did not seal the State's file.

While we reject the defendant's claim that failure to certify evidence prior to the grant of immunity justifies a refusal to answer, or requires reversal of a contempt conviction, we do not condemn the practice. It may indeed make easier the prosecutor's burden to prove that his evidence was properly obtained. *See Goldberg v. United States,* 472 F.2d 513, 516 at n. 5 (2nd Cir. 1973).

Because of our disposition we do not reach the remaining issues. We do note that if the defendant again refuses to answer, *State v. Case,* 100 N.M. 173, 667 P.2d 978 (Ct.App.1983) details the options available to the State.

We reverse the defendant's contempt convictions and sentence.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.