711 P.2d 19

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Carl CASE, Defendant-Appellant.**

**No. 7751.**

Court of Appeals of New Mexico.

March 21, 1985.

Janet E. Clow, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

This appeal involves the conviction and sentence of Case for contempt. Our discussion is divided into (1) the background; (2) the trial; and (3) the sentence.

## BACKGROUND

The victim was Nancy Mitchell. Case was convicted of first degree murder and first degree criminal sexual penetration. *State v. Case,* 100 N.M. 714, 676 P.2d 714 (1984) (*Case I*). He was sentenced to penitentiary terms of life and eighteen years, to be served consecutively. *State v. Case,* 100 N.M. 173, 667 P.2d 978 (Ct.App.1983) (*Case II*).

Case was called as a prosecution witness at the trial of Worley, who was also convicted of first degree murder and first degree criminal sexual penetration. *State v. Worley,* 100 N.M. 720, 676 P.2d 247 (1984). Case refused to answer questions, at the *Worley* trial, concerning the Nancy Mitchell homicide. Case's summary conviction of contempt was reviewed in *Case II.* We held that only one contempt had occurred, and remanded to the trial court for further proceedings. We held that the state could choose between two alternatives: (a) that Case could be sentenced for one contempt with any imprisonment not to exceed six months, or (b) that Case could be tried for contempt before a jury and any sentence imposed could exceed six months.

The state chose a jury trial. The trial was held in a different judicial district upon a change of venue with a different judge presiding. Case was convicted of contempt and sentenced to ten years imprisonment, to be served consecutively to all other sentences.

## TRIAL

█ Case's arguments as to error in the trial proceedings has two parts: A. defenses; and B. attempted introduction into evidence of portions of the *Worley* trial transcript.

### A. *Defenses*

Case also asserts that the trial court refused to permit him to present evidence in support of his defenses that he was denied the right to counsel and that he relied on a federal right against self-incrimination. As to the right to counsel in refusing to answer questions when called as a witness, see *Case II.* As to the right to rely on a federal right against self-incrimination, see *State v. Boeglin,* 101 N.M. 567, 686 P.2d 257 (Ct.App.1984), and *State v. Chavez,* 100 N.M. 612, 673 P.2d 1345 (Ct. App.1983). Neither of these asserted defenses was raised in the trial court; there is nothing to review as to these asserted defenses. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp. 1983).

Case did make a tender in connection with the asserted defense of duress. We do not consider the state's argument on appeal that the tender was insufficient to raise an issue as to duress. This argument is not considered because the trial court ruled that duress was not a defense to contempt. *Case II* so held. The contention on appeal is that duress should be a defense. This argument is based on Case's claim that because of his long penitentiary sentence he would be in danger of being killed as a "snitch" if he testified.

*In Re Yoho,* 301 S.E.2d 581, 583 (W.Va. 1983), states: "If fear of reprisal justified such refusal, criminals would be encouraged to silence potential witnesses by threats and violence, and the truth-finding process would be corrupted."

Case asserts that not to allow the defense of duress in contempt cases denies him equal protection of the law. This is not considered because it was not raised in the trial court. Crim.App.R. 308.

The claim that the trial court refused to permit Case to present evidence in support of his defenses is without merit.

### B. *Worley Trial Transcript*

The portions of the *Worley* trial transcript which were read to the jury consist-

ed of the calling of Case as a witness, the trial court's immunity order, and the sequences of asking Case a question, his refusal to testify, his being ordered to testify under penalty of contempt, and again, his refusal to testify.

Case requested that other portions of the transcript be read to the jury. The trial court refused this request on the basis that the refused portions were not relevant. On appeal Case asserts that the refused portions went to his asserted defenses. No such claim was made in the trial court nor was any claim made that the refused portions of the transcript were relevant to any issue in the contempt trial. *See* Crim. App.R. 308.

The claim made in the trial court was that the refused portions of the transcript were admissible under NMSA 1978, Evid. Rule 106 (Repl.Pamp.1983). This rule states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." This rule is subject to the requirement of relevancy. The rule applies only to the other parts of the document which are relevant and shed some light upon the parts of the document already admitted. *State v. Carr,* 95 N.M. 755, 626 P.2d 292 (Ct.App.1981).

■ Not having shown, or even claimed to the trial court, that the refused portions of the transcript were relevant, the trial court did not err in refusing admission under Evid.Rule 106.

**SENTENCE**

Case attacks his sentence of ten years for contempt on the following five grounds: (a) the sentence is unauthorized because it is contrary to the Criminal Sentencing Act; (b) due process of law was violated because he was not informed of the possible penalty; (c) due process of law was violated because the sentence was vindictive; (d) the sentence was an abuse of the trial court's discretion; and (e) the sentence constituted cruel and unusual punishment because it was disproportionate to the crime (the contempt) committed.

**(a) Unauthorized sentence.**

This issue involves the applicability of the Criminal Sentencing Act, NMSA 1978, Section 31–18–12 (Repl.Pamp.1981) and, specifically, the applicability of NMSA 1978, Section 31–18–13 (Repl.Pamp.1981). The Act states the sentences authorized for the several degrees of felonies and misdemeanors and for various conduct.

Section 31–18–13 provides:

A. Unless otherwise provided in this section, all persons convicted of a crime under the laws of New Mexico shall be sentenced in accordance with the provisions of the Criminal Sentencing Act [31–18–12 to 31–18–21 NMSA 1978].

B. Whenever a defendant is convicted of a crime under the New Mexico constitution, or a statute not contained in the Criminal Code, which specifies the penalty to be imposed on conviction, the court shall set as a definite term of imprisonment the minimum term prescribed by such statute or constitutional provision and may impose the fine prescribed by such statute or constitutional provision for the particular crime for which such person was convicted.

C. A crime declared to be a felony by the constitution or a statute not contained in the Criminal Code, without specification of the sentence or fine to be imposed on conviction, shall constitute a fourth degree felony as prescribed under the Criminal Code for the purpose of the sentence and the defendant shall be so sentenced.

D. Any other crime for which the sentence to be imposed upon conviction is not specified shall constitute, for the purpose of the sentence, a petty misdemeanor.

Case contends that Section 31–18–13 determines the sentence that could be imposed for his contempt. He asserts (1) that Section 31–18–13 applies because he was

held in contempt pursuant to NMSA 1978, Section 34–1–2 (Repl.Pamp.1981), a statute not contained in the Criminal Code; and (2) that even if not convicted of violation of a statute, that Section 31–18–13 still controls.

### (1) Statute not contained in the Criminal Code.

Case asserts that the maximum punishment that could be imposed was that for a fourth degree felony—eighteen months. He relies on Section 31–18–13(B) and (C) for the proposition that he was convicted under a statute not contained in the Criminal Code and because the statute, Section 34–1–2, does not specify a penalty, the maximum sentence is that for a fourth degree felony.

■ Case misunderstands Section 34–1–2 which does no more than state the common law rule that judges have authority to punish contempt by imprisonment. *In re Klecan*, 93 N.M. 637, 603 P.2d 1094 (1979); *State v. Clark*, 56 N.M. 123, 241 P.2d 328 (1952). The power to punish for contempt is inherent in the courts. *State ex rel. Bliss v. Greenwood*, 63 N.M. 156, 315 P.2d 223 (1957). Section 34–1–2 does not define either a "crime" of contempt or the substance of a contempt; it does no more than reiterate a court's inherent power to punish contempt. Because Section 34–1–2 does not define a "crime," Case's contempt conviction was not a conviction of violating Section 34–1–2. Neither subsection (B) nor (C) of Section 31–18–13 is applicable.

### (2) Limitation on punishment.

Case contends that subsections (A) and (C) of Section 31–18–13 provide the maximum punishment and this maximum is the punishment for a petty misdemeanor—not to exceed six months. Because he has been convicted of criminal contempt, Case asserts that Section 31–18–13(A) applies. Because the punishment for this crime is not specified by statute, Case asserts that the petty misdemeanor punishment of Section 31–18–13(D) applies.

Case overlooks *State ex rel. Bliss v. Greenwood* which holds the legislature may not impair or destroy the power of the court to punish for contempt "by limiting the penalty unduly * * *." 63 N.M. at 162, 315 P.2d 223. Such would violate the doctrine of separation of powers. Statutory arrangements purporting to govern the judiciary's power are not given effect when such arrangements are not reasonable and workable. *See State ex rel. Anaya v. McBride*, 88 N.M. 244, 539 P.2d 1006 (1975). Case's interpretation of Section 31–18–13(A) and (D) would limit the judiciary to a six-month sentence for contempt without consideration of the type of contempt or the consequences of the contempt. Such would be neither reasonable nor workable and would limit the penalty unduly. We reject Case's proposed unconstitutional interpretation and hold that subsections (A) and (D) of Section 31–18–13 do not apply to Case's contempt sentence.

### (b) Notice of the possible penalty.

■ We assume, but do not decide, that a failure to inform a person *charged* with contempt of the possible penalty, *see* NMSA 1978, Crim.P.R. 19 and 21(e) (Repl. Pamp.1980 & Cum.Supp.1984), could amount to a violation of due process. *See State v. Sanchez*, 89 N.M. 673, 556 P.2d 359 (Ct.App.1976); *cf. State v. Bing*, 272 S.C. 544, 253 S.E.2d 101 (1979), where there was no notice of a specific sentence and the warning "that he would be punished for contempt" was sufficient. *Id.*, 253 S.E.2d at 102. We need not consider the legal basis of this due process claim because the claim fails on the facts.

The information charging Case with contempt gave notice of a possible sentence of eighteen years. The judge who presided at Case's trial informed Case that he would not impose a sentence in excess of ten years. If Case is contending he was not given notice of the possible penalty in connection with the charge and trial for contempt, the claim is frivolous.

Case seems to be contending that he should have been given notice of the possible penalty for contempt before he commit-

ted that crime. Case asserts he was entitled to notice of the possible specific penalty at the time he was refusing to answer questions as a witness during the *Worley* trial. He claims that he was entitled to this information at that time so that he could consider it in reaching his decision to defy the court's order to testify. This contention has no legal merit. The contention has been made that a defendant accused of a narcotics offense was entitled to be warned of his constitutional rights before he committed the offense. *State v. Tapia,* 81 N.M. 365, 467 P.2d 31 (Ct.App.1970) and *State v. Anaya,* 81 N.M. 52, 462 P.2d 637 (Ct.App.1969), held that a defendant was not entitled to be advised of his constitutional rights before committing the crime. Similarly, a witness ordered by the court to answer questions is not entitled to be warned in advance of any possible specific penalty should he defy the warning and commit the crime.

■ Case was warned by the court of a penalty of one year for each question he refused to answer. The aggregate penalty, upon the refusal to answer ten questions, was ten years. *Case II.* Case was warned of the possibility of a penalty before he refused to answer any question. To the extent he was entitled to any warning of a specific penalty prior to committing any contempt, the warning given was sufficient and there was no violation of due process. *Cf. State v. Lopez,* 99 N.M. 612, 661 P.2d 890 (Ct.App.1983).

**(c) Vindictive sentence.**

■ At the *Worley* trial Case was sentenced to one year for each question he refused to answer, for a total of ten years. *Case II* held that only one contempt was committed. Now convicted of only one contempt, he asserts that any sentence in excess of one year was vindictive and, therefore, the present ten-year sentence was vindictive. His present sentence is not longer than the sentence originally imposed for his contemptuous conduct; it is not an increase in the total amount of punishment.

There is no factual basis for the claim of vindictiveness. *State v. Lopez.*

**(d) Sentence was an abuse of discretion.**

Case contends the ten-year sentence was an abuse of the trial court's discretion. Contempt sentences are reviewable for an abuse of discretion. *State v. Sanchez.* Abuse of discretion is defined as a conclusion clearly against the logic and effect of the facts and circumstances before the court, a decision clearly untenable, a decision clearly against reason and the evidence. *State v. Hargrove,* 81 N.M. 145, 464 P.2d 564 (Ct.App.1970).

■ *State ex rel. Apodaca v. Our Chapel of Memories of New Mexico, Inc.,* 74 N.M. 201, 205, 392 P.2d 347 (1964), states:

In imposing punishment for a criminal contempt, the seriousness of the consequences of the contumacious behavior, the public interest in enforcing a termination of defendant's defiance and the importance of deterring future defiance are all matters to be considered by the trial court. The trial court is accorded a large discretion.

The trial court may also consider "the extent of the willful and deliberate defiance of the court's order * * *." *United States v. United Mine Workers of America,* 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). In this regard, Case's "reluctance to be an informer, although legally insufficient to explain [his] refusals to answer, is a factor * * *." *Yates v. United States,* 355 U.S. 66, 75, 78 S.Ct. 128, 134, 2 L.Ed.2d 95 (1957). "Because of the nature of [the foregoing] standards, great reliance must be placed upon the discretion of the trial judge." *United States v. United Mine Workers of America,* 330 U.S. at 303, 67 S.Ct. at 701.

The trial court considered all of the above items. It considered a) that Case would get a "snitch jacket" if he testified; b) that Case claimed duress even though it was not a legal defense; c) that Case's offense would have been more serious if Worley had not been convicted; d) the rea-

sonableness of Case's action, including the fact that Case had testified at his own trial, had been granted immunity in the *Worley* trial, and the numerous opportunities Case was given to change his mind and purge himself of contempt; e) the advice of the prosecutor and defense attorney in the *Worley* trial that the sentence could not exceed six months and Judge Fort's statement that the advice was not correct.

However, the trial court gave the greatest consideration to the need to deter future behavior by a contemnor, who, like Case, was subject to a long prison sentence. Case had been sentenced to life plus eighteen years. When threatened with a one year sentence for each refusal to answer, Case said, "I got to serve 48 years anyway."

In light of the matters considered by the trial court, we cannot say the ten-year sentence was against reason and the evidence. Thus, we cannot hold that the trial court abused its discretion.

▮ In arguing to the contrary, Case presents the evidence in the light most favorable to himself. Case points out that Worley was convicted and that Case's refusals to testify had no perceptible effect on the outcome of Worley's trial. *See Case I.* The trial court considered this. He points out that his refusals were motivated by fear of reprisal. The trial court considered this. He asserts that any disruption in the *Worley* trial was due to the prosecutor and Judge Fort, and not due to himself. This is incorrect. *See Case II.* The essence of Case's argument is that this court should substitute its judgment for that of the trial court. We may not do so. *See State v. Page,* 83 N.M. 487, 493 P.2d 972 (Ct.App.1972). If Case is asking this court to modify his sentence, we lack the power to do so. *State v. Sanchez.* The appellate issue is whether the sentence was an abuse of discretion. There was no abuse of discretion.

**(e) Sentence was disproportionate to the crime committed.**

▮ Case states that his sentence of ten years violates the constitutional prohibition of cruel and unusual punishment. He relies on *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), which states that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Case asserts a lack of proportion. He claims that his contempt was not violent, and inferentially not a grave offense. He contends a ten-year sentence is harsh. He asserts this court must make a detailed analysis of offenses in this and other jurisdictions and identify offenses similar to his contempt offense. Having found a similar offense, and on the basis of such similarity, he insists the sentences must be compared. He asserts that such a review will establish that his sentence is too long. We do not consider that *Solem* requires such a review.

Our decisions on proportionate sentences, as does *Solem,* involved statutory sentences. *State v. Harris,* 101 N.M. 12, 677 P.2d 625 (Ct.App.1984); *State v. Burdex,* 100 N.M. 197, 668 P.2d 313 (Ct.App. 1983); *State v. Garcia,* 100 N.M. 120, 666 P.2d 1267 (Ct.App.1983). This appeal involves a nonstatutory sentence for contempt. *Solem* involved a life sentence; this appeal involves a ten-year sentence. *Solem* is distinguishable on the facts.

▮ Should the concept of proportionate sentencing be applicable to Case's sentence, our view, stated in *State v. Harris,* is that until the United States Supreme Court provides more specific guidelines for proportionality review of discrete sentences, we will follow *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), which holds that successful challenges to the proportionality of particular sentences should be exceedingly rare. A ten-year sentence for contempt, under the circumstances of this case, is not to be reversed on the basis of *Solem.*

The judgment and sentence are affirmed.

IT IS SO ORDERED.

NEAL and ALARID, JJ., concur.