801 P.2d 662

STATE of New Mexico, Plaintiff–Appellee,

v.

CHRISTOPHER P., Respondent–Appellant.

No. 11178.

Court of Appeals of New Mexico.

July 3, 1990.

Certiorari Granted Sept. 17, 1990.

Hal Stratton, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Billy R. Blackburn, Albuquerque, for respondent-appellant.

## OPINION

APODACA, Judge.

The child appeals the children's court's orders transferring the proceedings filed against him to district court and denying his motion to suppress certain statements made to police after his arrest. The children's court ordered the transfer after concluding that the child was not "amenable to treatment or rehabilitation as a child through available facilities" as required by NMSA 1978, Section 32–1–30(A)(4) (Repl. Pamp.1986).

The two issues raised on appeal involve implications of the fifth amendment privilege against self-incrimination: (1) whether the child's statements concerning the subject incident, made during a court-ordered psychological examination, can be used as a basis for the psychologist's opinion testimony on the amenability issue; and (2) whether the children's court's holding that the child voluntarily, knowingly, and intelligently waived his constitutional rights before making the statements was supported by substantial evidence. Being unpersuaded by the child's arguments, we affirm on both issues. A third issue raised in the docketing statement but not briefed is deemed abandoned. *State v. Vogenthaler,* 89 N.M. 150, 548 P.2d 112 (Ct.App.1976).

On February 23, 1988, a petition was filed in the children's court charging the child and a co-respondent, another child, with the delinquent acts of two counts of first degree murder (willful and deliberate with firearm enhancement), and conspiracy to commit murder, of the co-respondent's parents. The assistant children's court attorney petitioned to have the matter transferred to district court and that the child be directed to undergo a psychological examination on the question of whether he was amenable to treatment or rehabilitation through available facilities under Section 32–1–30(A)(4).

The transfer hearing was bifurcated. The children's court first heard evidence on the question of whether there were reasonable grounds to believe the child committed the alleged delinquent acts as required under Section 32–1–30(A)(5), before ruling on the state's motion for the psychological evaluation. After hearing the psychologist's testimony on amenability at a separate hearing, the children's court entered an order transferring the proceedings to district court.

## ISSUE I: PSYCHOLOGICAL EXAMINATION

The child does not contest the children's court's authority to require the psychological evaluation. *See State v. Doe,* 97 N.M. 263, 639 P.2d 72 (Ct.App.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) (*97 Doe I*). Instead, he contends compelled self-incriminating answers given by him to the psychologist's questions were improperly used against him. In so arguing, he points to two separate alleged violations of his fifth amendment privilege: (1) he was compelled to answer the psychologist's questions concerning the incident giving rise to the petition; and (2) because the psychologist's testimony was the only evidence presented on the amenability issue, his compelled self-incriminating answers were used improperly against him in a criminal proceeding. U.S. Const. amend. V.

■ In making its determination concerning the psychological evaluation, the children's court concluded that the evaluation would be of significantly less assistance in determining amenability if the evaluator was not able to communicate with the child concerning the incident. The child maintains this conclusion by the children's court impermissibly compelled him to make self-incriminating statements to the psychologist. However, we believe the children's court was legitimately concerned with the level of expert assistance regarding amenability. *See State v. Doe,* 93 N.M. 481, 601 P.2d 451 (Ct.App.1979) (amenability is an evidentiary question requiring careful and cautious consideration) (*93 Doe*).

■ The child argues that, because the contemplated transfer would expose him to more severe punishment and because his amenability to treatment and rehabilitation was the only remaining issue, the hearing

at which such amenability was considered should be deemed a "penalty phase" of the criminal proceedings. *See Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (fifth amendment privilege applies in penalty phase of criminal proceedings). The child does not claim that transfer to district court was based on a determination of guilt or directly resulted in punishment. In *State v. Doe,* 103 N.M. 233, 704 P.2d 1109 (Ct.App.1985) (*103 Doe*), this court observed that, although the consequences of a transfer are important to the child, the transfer process determines only where he will be tried.

■ Alternatively, the child contends it does not matter if we do not agree with his characterization of the transfer process as a "penalty phase." In support of this contention, he relies on *In re Gault,* 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967), which stated that "the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." However, in this case, the children's court, in its order permitting the evaluation, expressly protected the child against potential exposure by reason of his statements to the psychologist. Specifically, the order allowing the psychologist's evaluation clearly stated that any information gleaned by the evaluator about the incident could be used only at the amenability portion of the transfer hearings. Thus, the order protected the child from his statements being used in any future criminal proceeding.

The fifth amendment

privileges a defendant not to answer questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might tend to incriminate him in future criminal proceedings. Defendant [has] the right to refuse to answer *until he [is] protected against the use of his compelled answers,* and evidence derived [from those answers], in any subsequent criminal case in which he might be a defendant.

*Rainbo Baking Co. of Albuquerque, Inc. v. Apodaca,* 88 N.M. 501, 504, 542 P.2d 1191, 1194 (Ct.App.1975) (emphasis added). In *97 Doe I,* we declined to hold "that expert testimony resulting from an involuntary examination ordered by the court which is acceptable on a transfer motion would necessarily withstand a Fifth Amendment attack if offered at trial." *Id.,* 97 N.M. at 266, 639 P.2d at 75. Thus, because of the express language contained in the children's court order protecting the child from the use of the statements in any future criminal proceedings, the potential for exposure prohibited by *Gault* is nonexistent in this appeal.

We also need not determine whether a child's self-incriminating statements may be used to support a finding of reasonable grounds to believe that he committed the alleged delinquent act, as required under Section 32–1–30(A)(5). *See State v. Doe,* 97 N.M. 598, 642 P.2d 201 (Ct.App.1982) (*97 Doe II*). The children's court found reasonable grounds existed based on evidence presented at a separate hearing held before the psychological evaluation took place. The child's statements made to the psychologist, on the other hand, bore only on the amenability issue.

■ Additionally, in *103 Doe,* we essentially held that the amenability question is not determinative of whether the child should be tried as an adult. "Amenability enters the analysis only to let the children's court know that it is not required to transfer all children believed to have committed serious felonies." *Id.,* 103 N.M. at 239, 704 P.2d at 1115. Section 32–1–30(A)(4) requires only that the children's court *consider* the amenability question, nothing more.

Other jurisdictions have similarly found that court-ordered psychiatric examinations used to aid amenability determinations do not violate the fifth amendment. *See, e.g., Lippold v. State,* 365 So.2d 1015 (Ala.Crim.App.1978); *In re Appeal in Pima County, Juvenile Action No. J–77027–1,* 139 Ariz. 446, 679 P.2d 92 (Ct.App.1984); *State in Interest of Bruno,* 388 So.2d 784 (La.1980); *S.R.J. v. State,* 293 N.W.2d 32 (Minn.1980);

*Commonwealth v. Dotson*, 286 Pa.Super. 595, 429 A.2d 682 (1981); *C.J.P. v. State*, 650 S.W.2d 465 (Tex.Ct.App.1983); *In re G.B.K.*, 126 Wis.2d 253, 376 N.W.2d 385 (Ct.App.1985).

We also decline to adopt the child's characterization of the transfer process as a "penalty phase" of the criminal proceedings. We find even less reason to so characterize the amenability consideration of the transfer process. We thus hold that the fifth amendment privilege against self-incrimination does not apply to the evidence admitted to assist the children's court in considering the amenability question.

In summary, we determine that the amenability phase of the transfer process was not a "penalty phase." We also conclude that the children's court expressly protected the child against the use of his self-incriminating statements in any future criminal proceedings. Consequently, we hold there was no error committed in the limited use of the child's responses during the psychological evaluation. *See State v. Urioste*, 95 N.M. 712, 625 P.2d 1229 (Ct. App.1980).

## ISSUE II: THE CHILD'S STATEMENTS TO POLICE

On February 22, 1988, the child was arrested and taken to the Bernalillo County Detention Center. En route, he was interrogated by Detective Olivares. However, following the arrest and before transporting him to the center, the police read to the child his *Miranda* rights, and the child acknowledged that he understood them. The child moved to suppress the statement that he gave to the police.

The children's court denial of the motion to suppress was based on a finding that the statements were elicited after a knowing, intelligent, and voluntary waiver of his fifth amendment rights was obtained. *See* NMSA 1978, § 32–1–27(D) (Repl.Pamp. 1986). The child does not contend he was not properly advised of his constitutional rights under Section 32–1–27(C). Thus, the only question before us is whether the police secured a knowing, intelligent, and voluntary waiver of those rights before obtaining his statements as required by Section 32–1–27(D).

The child argues that the weight of the evidence at the suppression hearing made it "clearly improbable" that the waiver of his constitutional rights was knowing, intelligent, and voluntary. However, we do not consider the weight of the evidence when determining whether substantial evidence exists. *State v. Santillanes*, 86 N.M. 627, 526 P.2d 424 (Ct.App.1974). Additionally, our standard of review when evaluating a claim that a person did not knowingly, voluntarily, and intelligently waive constitutional rights is whether substantial evidence supports the trial court's ruling. *State v. Greene*, 91 N.M. 207, 213, 572 P.2d 935, 941 (1977); *State v. Courtright*, 83 N.M. 474, 493 P.2d 959 (Ct.App. 1972).

Section 32–1–27(E) lists specific circumstantial factors that the children's court must consider in determining whether the proper waiver was secured. The child urges us to consider independently the evidence relating to each factor listed in the statute. *See* § 32–1–27(E). However, those factors are for the children's court to consider, not this court. *Id.; see also* NMSA 1978, § 32–1–3(C) (Repl.Pamp. 1986). That the children's court ultimately made a finding against the child on this issue does not mean that the children's court did not consider the factors. *See 103 Doe.*

We have reviewed the evidence presented to the children's court. This evidence indicated that (1) the child was "pretty smart"; (2) he was given his *Miranda* rights and understood them; (3) he signed a waiver of rights form; (4) he indicated he wanted to talk to the officer alone without any attorneys or parent present; (5) he declined the opportunity for more time or for food and drink; (6) he denied he was under the influence of drugs or alcohol; and (7) he appeared to his questioners to be coherent and rational. We hold that this evidence substantially supports the trial court's determination. The fact that there was evidence upon which conflicting inferences could be drawn does not alter the

fact that substantial evidence supported the trial court. We so hold because, under a substantial evidence standard, we view the evidence in the light most favorable to the result below, resolving all conflicts and indulging in all inferences in favor of the decision. *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978). Based on our review of the evidence, we conclude there was substantial evidence supporting the children's court order denying the motion to suppress.

CONCLUSION

We hold that the amenability phase of the transfer proceedings was not a "penalty phase" and that the children's court protected the child against use of any self-incriminating statements in any future criminal proceedings. For these reasons, we hold there was no error in the limited use of the child's responses during the psychological evaluation. We also conclude the children's court did not err in determining the child properly waived his constitutional rights. We therefore affirm the order transferring the proceedings to district court and the order denying the child's motion to suppress.

Finally, we note that the child's surname has not been deleted from the record, contrary to NMSA 1978, Section 32–1–39(A) (Repl.Pamp.1989). The clerk of this court is directed to delete the child's surname from all documents filed in this court that are not part of the children's court record. The children's court judge shall likewise order deletion of the child's surname from the children's court record.

IT IS SO ORDERED.

BIVINS, C.J., and DONNELLY, J., concur.