779 P.2d 550

STATE of New Mexico,
Plaintiff–Appellee,

v.

Darrol HELMS, Defendant,

and

Ann Hughes, M.D.,
Contemnor–Appellant.

No. 11491.

Court of Appeals of New Mexico.

July 18, 1989.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Beth Schaefer, Asst. Gen. Counsel, New Mexico Health & Environment Dep't, Santa Fe, for contemnor-appellant, Ann Hughes, M.D.

Rebecca W. Ehler, Chaves County Atty., Roswell, for the Administrator of the Chaves County Detention Center.

Arturo D. Hernandez, Roswell, for defendant Darrol Helms.

## OPINION

HARTZ, Judge.

Dr. Ann Hughes appeals from an order holding her in contempt of court. We reverse because she was not afforded the procedural protection required before criminal penalties can be imposed for contempt.

The controversy arose out of a criminal proceeding against Darrol Helms. The district court had found Helms incompetent to stand trial and on January 25, 1989, entered an order that he be returned to the Forensic Division of the State Hospital in Las Vegas for treatment. Dr. Hughes is Clinical Director of the Las Vegas Medical Center.

On March 3 the administrator of the Chaves County Detention Center moved for an order requiring Dr. Hughes to show cause why she should not be held in contempt of the January 25 order because of her refusal to accept Helms as a patient at the Las Vegas facility. That same day the district court issued an order to show cause. The order issued without any affidavit or sworn testimony having been provided in support. The order was mailed to Dr. Hughes. The district court conducted

a hearing on the show cause order on March 20, with Dr. Hughes and her attorney both present. On March 21 affidavits dated March 3 were filed in support of the order. On April 13 the district court entered an order finding Dr. Hughes in contempt. The contempt order stated:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that sanctions in this matter are deferred for a period of ten (10) days from the entry of this Order; if the contempt is purged within that time no further action will be taken.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that should the contempt not be purged within ten (10) days of the date of this Order, Dr. Hughes shall be ordered to serve a thirty (30) day sentence in the Chaves County Detention Center.

If the sanction for contempt was criminal in nature, then the proceedings were a nullity because the order to show cause was issued without there having been any affidavit or sworn testimony provided to the court to support that order. *See State v. Clark,* 56 N.M. 123, 241 P.2d 328 (1952); *Escobedo v. Agriculture Prod. Co.,* 86 N.M. 466, 525 P.2d 393 (Ct.App. 1974).

The central question, therefore, is whether the contempt was civil or criminal. In *Lindsey v. Martinez,* 90 N.M. 737, 568 P.2d 263 (Ct.App.1977) we held that a contempt proceeding resulting in a similar order involved both civil and criminal contempt. The contempt order in *Lindsey* sentenced the contemnor to six months in jail, but stayed imposition of the sentence to permit contemnor to purge the contempt by complying with five specified items. We reversed the contempt order because of failure to comply with the rules governing criminal proceedings.

Rather than distinguishing the order in *Lindsey* from the order in this case, the Chaves County Detention Center relies on *Hicks ex rel. Feiock v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) to support its claim that the contempt in this case was civil, so criminal procedures

were not required. Insofar as *Hicks* would categorize a contempt as civil, it is not binding on this court, because nothing would prevent New Mexico from requiring criminal contempt procedures in a case which would be considered a civil contempt by the United States Supreme Court. Nevertheless, we would reconsider *Lindsey* if it appeared to be contrary to the analysis of the highest court in the land. Our review of *Hicks,* however, shows that it supports the result in *Lindsey.*

According to *Hicks,* in determining whether a contempt is criminal or civil,

the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 ... (1911).

485 U.S. at ——, 108 S.Ct. at 1429, 99 L.Ed.2d at 731. We are not bound by whether the contempt was characterized as civil or criminal in the court below, *see id.* We determine the purpose of the contempt from the character of the relief imposed, not by attempting to psychoanalyze the subjective intent of the trial judge. *See id.* at ——, 108 S.Ct. at 1431–32, 99 L.Ed.2d at 733–35.

The Detention Center does not contest that a contempt is criminal if the court imposes a determinate prison sentence. In this case, however, the prison sentence was conditional. Dr. Hughes had ten days after the contempt order was issued within which to comply with the January 25 order and thereby avoid any jail time. The Detention Center relies on the statement in *Hicks* that "[i]f the relief imposed here is in fact a determinate sentence with a purge clause, then it is civil in nature." 485 U.S. at ——, 108 S.Ct. at 1434, 99 L.Ed.2d at 737. The Detention Center apparently believes that the ten-day provision constitutes a purging clause because it permitted Dr.

Hughes to avoid jail by compliance with the January 25 order within that time period.

 As we read *Hicks*, however, a provision in a contempt order is a "purging clause" only if it provides that the imprisoned contemnor can get out of jail *at any time* by complying with the court's order. *Hicks* stated that imprisonment can be civil when "the contemnor 'can end the sentence and discharge himself at any moment by doing what he had previously refused to do.'" 485 U.S. at ——, 108 S.Ct. at 1430, 99 L.Ed.2d at 732 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. at 442, 31 S.Ct. at 498) and that a conditional imprisonment is civil because " 'those who are imprisoned until they obey the order, "carry the keys of their prison in their own pockets." ' " *Id.* (quoting *Penfield Co. v. SEC*, 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947), quoting *In re Nevitt*, 117 F. 448, 461 (8th Cir.1902)). Even if *Hicks* is not perfectly clear on this point, the proposition cannot be doubted in light of *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), which *Hicks* described as following the principles *Hicks* enunciated. 485 U.S. at ——, 108 S.Ct. at 1431, 99 L.Ed.2d at 732–33. In *Shillitani* two immunized witnesses who had refused to testify before a grand jury were each sentenced to two years' imprisonment for contempt. Each could purge the contempt and be released from prison if he changed his mind and answered the questions posed. Because of the purging provisions of the contempt order, the United States Supreme Court held that the contempt was civil in nature. The *Shillitani* decision added, however, that the sentence of imprisonment had to end when the grand jury ceased its inquiry into the witnesses' activities. 384 U.S. at 371, 86 S.Ct. at 1536. If the imprisonment extended beyond that time, the contempt would no longer be civil, since the witnesses no longer would have the opportunity to purge the contempt by agreeing to testify. *Id.* *See also State v. Sanchez*, 89 N.M. 673, 556 P.2d 359 (Ct.App.1976) (contempt was criminal when witness in criminal trial was sentenced to fixed prison term for refusing to answer questions; contempt or-

der gave witness opportunity to purge the contempt by answering the question before defendant rested her case).

 Turning to the case at hand, the contempt order may well have been intended to be remedial—to achieve the result sought by the Detention Center—rather than punitive. The threat of a lengthy sentence would certainly encourage Dr. Hughes to comply with the order. Nevertheless, the line between a remedial and a punitive prison sentence is crossed once the contemnor cannot obtain her release by compliance with the court's order. Once Dr. Hughes' jail term began, she could do nothing to obtain her release; she would be dispossessed of her keys. The imprisonment at that point became punitive. The contempt sanction was therefore criminal in nature.

The district court's order is reversed.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.